SCHOTT, Judge.
On July 1, 1974, plaintiff, Roger A. Ken-worthy, and his wife Greer G. Kenworthy entered into a written stock purchase agreement with defendant, Dr. Ivan F. Caudill, by which the Kenworthys sold to Caudill all of the stock of defendant, Outlook, Inc., which operated a mens’ clothing store in New Orleans. The price consisted of $30,000 in cash and a note for $36,000, payable in quarterly installments beginning on September 1, 1974.
This suit was filed by Kenworthy as the holder of the note on July 17, 1975. He sought $27,000, alleging that the first two quarterly payments had been made for September, 1974, and January, 1975. He also combined in this suit on the note a claim for damages for various reasons following the execution of the note and contract. In response defendants pleaded the affirmative defense of failure of consideration and they asserted a reconventional demand against Kenworthy and a third-party demand against Mrs. Kenworthy for damages allegedly sustained because of Kenworthy’s actions following the execution of the note and contract.
The trial judge rendered judgment in favor of plaintiff against Caudill, Inc. and Dr. Caudill for the balance of $27,000 on the note with interest and attorney’s fees. All other claims of Kenworthy were dismissed. Likewise, all claims asserted by defendants in their reconventional demand and third-party demand were dismissed. From that judgment only the defendants have appealed, but Kenworthy neither appealed nor answered defendants’ appeal, so that the other claims asserted by Kenworthy are not before us. In addition, the appeal was taken only by Caudill, Inc. and Dr. Caudill, but no appeal was taken by Outlook, Inc. so that it is not a party to this appeal.
The trial judge has favored us with the following reasons for judgment:
“The Court is of the opinion that the defendant has failed to prove by that *1231 preponderance of the evidence necessary for him to prevail that the balance due on the said note is not due and owing, and there will be judgment in plaintiff’s favor for the balance due on the said note of $27,000.00.
“With reference to defendant’s claim for damages, the Court is of the opinion that defendant has failed to prove by a preponderance of evidence one iota of damages which he may have suffered as the result of any action on the part of the plaintiff.
“There is no question in the Court’s mind that the plaintiff failed to act entirely in good faith during the operation of the two businesses (Lui, Inc., and Outlook, Inc.), and there is further no doubt but that there was misrepresentation in connection with the purchase agreement. However, defendant had admitted that ‘all discrepancies were cleared up’ and he proceeded thereafter without complaint until the businesses failed and these proceedings were instituted. While the actions of the plaintiff may well have caused damage to defendant, defendant has failed to submit any evidence in support thereof which would enable the Court to make any monetary award.”
At the outset we will address the first specification of error urged by appellants. They contend that the trial court erroneously allocated to them the burden of proof in the case. Pointing to the first quoted paragraph of the trial judge’s reasons they maintain that this is inconsistent with the jurisprudence which holds that even though a plaintiff is entitled to a presumption that the note he sues on is supported by a consideration, if the defendant offers evidence which casts doubt upon the reality of the consideration the ultimate burden of proving consideration by a preponderance of the evidence is on the plaintiff. Andrews v. Williams, 281 So.2d 120 (La.1973), Redi-Spuds, Inc. v. Dickey, 230 La. 406, 83 So.2d 801 (1956), Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257 (1956).
We disagree with appellants that there is any inherent contradiction between the statement of the trial court and the cited jurisprudence. Apparently, the trial judge took the position, and we agree, that the testimony and evidence offered by appellants was not even sufficient to make it appear doubtful that full value was given to appellants for the note. Even if some doubt was initially cast on the consideration, however, the evidence does not preponderate in appellants’ favor on their defense to the note.
Appellants were provided with a statement of operations and a balance sheet on Outlook, Inc., dated May 31, 1974, and subsequent to the sale in July they were provided with a statement of Outlook’s condition as of June 30, which contained some substantial discrepancies with the earlier statement. For one, the stockholder’s equity had been reduced from $39,659 to $36,-903. According to appellants this constituted a breach of one of the warranties contained in the sales agreement by which the “assets” were supposed to amount to $40,-000 as of the closing date on July 1. However, whatever rights may have accrued to appellants because of this discrepancy were waived. Dr. Caudill testified that he was paid the difference of $3,097 on August 1 and he was satisfied that this aspect of the problem had been settled. Similarly, the statement of May 1 showed, among Outlook’s assets, an amount due from Lui, Inc. of $15,741, whereas the statement of June 30 received by appellants after the closing showed an amount due from Lui in the amount of $50,682.
At this point, it should be understood that when Kenworthy sold Outlook to appellants he already had another clothing store which was Lui, Inc. When he left Outlook he was employed by Dr. Caudill at $1,000 a month to train Outlook’s new manager. From the very beginning difficulties developed because Kenworthy was buying merchandise for Lui at the same time he was working with Outlook’s new manager in purchasing merchandise for Outlook. He was also using the credit of Dr. Caudill and Outlook for purchases he was making for Lui. Dr. *1232 Caudill was aware that Kenworthy was making purchases for both corporations but claimed he did not become aware until much later that his credit was being extended for Lui’s benefit.
In any event, he testified that by September, 1974, the amount due Outlook by Lui was cleared up partially with merchandise transferred from Lui to Outlook and finally with Lui’s check to Outlook for $20,670. There was also on the statements a note payable by Outlook to the bank for $25,000 which was, according to the agreement, to be paid simultaneously with the sale on July 1, but which was not finally paid until September.
It is clear that some of the obligations undertaken by Kenworthy were not complied with as promptly as the agreement contemplated but appellants clearly waived any objection they had to Kenworthy’s dilatory performance. The problems which we have discussed relative to discrepancies in the statements furnished before and after the sale were cleared up to appellants’ satisfaction by Dr. Caudill’s own admission and no legal ground for complaint as to these items remained.
Significantly, Dr. Caudill paid the quarterly installments due on the note on September 1, 1974, and January 1, 1975. During this period of time Outlook declined and eventually went bankrupt. No legal action was taken by appellants against Kenworthy until after this suit was filed in July, 1975. This is another reason why we have had no difficulty concluding that the various objections made by Dr. Caudill to the so-called discrepancies were waived by him.
Remaining arguments center around Kenworthy’s use of Outlook’s credit to build up Lui’s inventory and appellant’s theory that this caused Outlook to fail. We agree with the trial court that appellants have not produced sufficient proof of this allegation. First, we must observe that Kenworthy and Dr. Caudill maintained a close business relationship after Outlook was sold and it was with Caudill’s understanding and permission that Kenworthy was functioning as the buyer for both companies. Much of the merchandise, although delivered to Lui after the sale, was ordered before when Ken-worthy was the owner of both companies and had a perfect right to utilize the credit of Outlook when the purchases were made. Even though Caudill maintained that he was unaware that Outlook’s credit continued to be used by Kenworthy in making purchases for Lui there was no proof that this was a direct cause of Outlook’s ruin. It is equally feasible that Outlook failed because it was under capitalized and badly managed. Many checks were drawn by Dr. Caudill on Outlook for his personal expenses. It was shown that Outlook was probably over extended because of the opening of a branch in New Roads at a time when the original Outlook was already floundering. When the entire history of the relationship between Kenworthy and Caudill, the developments which took place following the sale on July 1 and the ultimate downfall of Outlook are considered in the light that Dr. Caudill made his first two payments due on the note, the logical explanation for this lawsuit appears to be that appellants were attempting to place the blame on Kenworthy for their own failure to make the business succeed. Ultimately, the only claim which was proved here was the note and all of the other claims were unproven.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.