WARD, Judge.
This is a suit on a promissory note. Dora T. Arguello is the maker, and Sauro Mon-tesino is the payee of the note, which was dated June 15,1979, and is a promise to pay $10,000.00 in 25 equal monthly installments of $400.00 per month, beginning July 1, 1979, without interest. The note recites the usual clause, acknowledging that for value received, Mrs. Arguello promised to pay $10,000.00 to Sauro Montesino.
The Trial Judge rendered judgment in favor of Mr. Montesino in the amount of $8,000.00, because he found Mrs. Arguello had paid $2,000.00 on the note. Mrs. Ar-guello has appealed that judgment.
Mr. Montesino contends that the note is evidence of a $10,000.00 cash loan he made to Mrs. Arguello. She contends that she signed this promissory note for the purchase of a grocery store from Mr. Montesi-no and his wife and that in spite of the terms of the note it is not due or payable until her loan from the Small Business Administration has been paid.
The parties to the suit, who are the original parties on the note were acquaintances and both are of Spanish American origin, fluent in Spanish but not in English. Both parties were anxious to consummate the sale and to transfer ownership of the grocery store from Mr. Montesino and his wife to Mrs. Arguello for the agreed purchase price of $50,000.00. Mrs. Arguello sought information from the Small Business Administration about a loan to purchase the store, and she was informed that the SBA would finance only $40,000.00 and that the SBA further required that she invest in the business at least 15% of the purchase price. Mr. Montesino volunteered to help her get *384 her loan, and he also agreed to finance the 15%, $10,000.00 himself.
Mrs. Arguello applied for an SBA loan on May 7, 1979, and on May 22, 1979, Mr. Montesino sent a letter of support for her application. In that letter he proposed the following arrangements for the secondary financing. He said that he and Mrs. Ar-guello would “finance the additional $10,-000.00 between the two of us. What will happen is that Dora will pay off the entire SBA loan of $40,000.00 in its required terms. At that point, she will begin making monthly payments to me, in order to pay off the additional $10,000.00. I would like to make it clear that I will not try to collect this money until the SBA loan has been completely paid off.”
Shortly thereafter, Mr. Montesino deposited $15,000.00 in a savings account in the name of Mrs. Arguello and instructed an officer of the bank to retain possession of the passbook so that the deposit could not be withdrawn by Mrs. Arguello. He also requested the officer to provide a letter verifying that Mrs. Arguello had $15,000.00 in a savings account. The letter was dated June 5, 1979. Mr. Montesino testified that he deposited the money to her account to help her obtain the loan, that is, to show that she had at least 15% of the $50,000.00 because “she didn’t have a single penny.” The $15,000.00 was thereafter withdrawn and returned to Mr. Montesino and is of no further significance in this lawsuit.
The SBA gave tentative approval to a loan of $40,000.00, for the purchase of both the business and the inventory with the understanding that the proceeds were to be applied to the purchase price of $50,000.00, and the balance of $10,000.00 was to be financed by Mr. Montesino through a standby agreement in accordance with the terms outlined in Mr. Montesino’s letter to the SBA. Both the loan and the standby agreement were to be signed June 29, 1979. Nevertheless, on June 15, 1979, Mrs. Ar-guello, at the request of Mrs. Montesino, signed the $10,000.00 promissory note, the subject of this lawsuit. Also, there was a last minute change. On June 28, 1979, the SBA completed an inventory at the store and determined the value of the inventory to be $4,027.25 less than represented by Mr. Montesino, and when the Act of Sale, the mortgage, and the accompanying standby agreement were signed by Mr. Montesino and Mrs. Arguello on June 29, 1979, the SBA instructed Mr. Montesino to reimburse Mrs. Arguello the difference, $4,027.65. He paid this amount to her on July 2,1979, and on the same day, Mrs. Arguello gave Mr. Montesino a personal check for $2,000.00 as payment “on her SBA loan”.
Later, Mr. Montesino demanded payment of the $400.00 per month, Mrs. Arguello refused, and he filed suit in April, 1980. The substance of this dispute is that Mrs. Arguello contends the note in question was given in anticipation of the act of sale and that the note was modified by the standby agreement. On the other hand, Mr. Mon-tesino denies that the disputed note signed June 15, 1979 has any connection with the sale of his store, and he contends that there was $10,000.00 cash given as a loan to Mrs. Arguello in exchange for the note. The record reflects both versions of the transaction.
Mr. Montesino testified that sometime before the noté and the sale, although he could not remember the exact date, it was around “June 4th”, he gave Mrs. Arguello $10,000.00 in cash. He explained he had this amount of money available because his wife had a habit of saving and holding large sums of money. He recalled that his wife had been out of town and visiting in Cuba when he loaned the money to Mrs. Arguello. He gave a variety of explanations for loaning her the money: she wanted to bring her family to the United States from Columbia; she had to have open heart surgery; he wanted to help her operate her business. He explained that when his wife returned, she demanded that Mrs. Arguello sign a note and that his wife was present when Mrs. Arguello signed the note acknowledging the loan. Mrs. Montesino did not sign as a witness to the note nor did she testify at trial.
*385 Mrs. Arguello denies ever receiving $10,-000.00 in cash and testified that the note was given as partial payment for the purchase of the grocery store to make up the difference between the $40,000.00 SBA loan and the $50,000.00 purchase price. She also denied that Mrs. Montesino was present when she signed the note. She claims she signed the note only after Mr. Montesino told her the note was for part payment of the purchase price.
In a suit on a note where the defense is failure of consideration, LSA-R.S. 10:3-408, parol evidence is admissible to prove the defense Laspopoulos v. Earl, 376 So.2d 965 (La.App. 4th Cir.1979). The Commercial Laws of LSA-R.S. 10:1-101, et seq., do not spell out the presumption of former LSA-R.S. 7:24, that consideration is presumed for a note, but the jurisprudence has long held that “even though a plaintiff is entitled to a presumption that the note he sues on is supported by a consideration, if the defendant offers evidence which casts doubt upon the reality of the consideration the ultimate burden of proving consideration by a preponderance of the evidence is on the plaintiff.” Kenworthy v. Outlook, Inc., 368 So.2d 1229 (La.App. 4th Cir.1979).
We believe that the testimony, the documents supporting the sale, the loan, the standby agreement, and all the circumstances of the entire transaction between these parties cast serious doubt on Mr. Mon-tesino’s claim that he privately and secretly gave Mrs. Arguello $10,000.00 cash money. The doubt rises to incredibility in the face of Mr. Montesino’s statement that he knew Mrs. Arguello to be without a “single penny”, yet he loaned her $10,000.00 on an unsecured note. We also do not believe that it is only a coincidence that the amount of the note and the difference between the loan from the SBA and the purchase price is exactly the same. In addition to all of the above, Mrs. Montesino did not corroborate her husband’s version of the transaction. She did not appear to testify. Although counsel for Mr. Montesino informed the Court that Mrs. Montesino would not be available to testify because she was minding the store, there is a presumption in law grounded on common sense, “that evidence under the control of a party and not produced by him was not produced because it would not have aided him”. La.R.S. 15:432.
In Lowenburg v. Labor Pool of America, Inc., 296 So.2d 846 (La.App. 4th Cir.1974) this Court has gone further and held “that the failure of a party to call a witness creates a presumption that the witness’ testimony would have been unfavorable to that party where the party has the burden of proof or the party has some control over, or a close relationship with the witness.”
We believe, therefore, that the consideration for the note was the purchase of the grocery store, as Mrs. Arguello argues, and that the note was given as partial payment for the purchase price. This, of course, would be adequate consideration to support the note. However, we also believe the parties modified the terms of the note by other written agreements which were part of the same transaction. The record indicates the following facts which support this conclusion.
The Act of Sale, the loan agreement, Mr. Montesino’s letter to the SBA detailing his plans to finance the $10,000.00, and the Standby Agreement all reflect that Mr. Montesino agreed to accept the status of a standby creditor and to defer collection of the balance. The Act of Sale states that the “[vjendee promises to pay to vendor the remaining sum of Ten Thousand and no/100 ($10,000.00) Dollars at some mutually agreed upon future date.” Mr. Montesino’s May 22, 1979, letter to the SBA states that he will not attempt to collect the balance until the SBA loan has been paid, and this was incorporated in the Standby Agreement.
As to original parties to a promissory note, the note may be modified by subsequent agreements. LSA-R.S. 10:3-119 provides:
(1) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agree- *386 merit executed as a part of the same transaction,....
Mr. Montesino’s letter describing his agreement with Mrs. Arguello and the provisions of the Standby Agreement provide that the obligation to him shall be payable when the SBA loan has been paid — seven years from June, 1979, and those written documents have modified the terms of the promissory note which was in Mr. Montesi-no’s possession at the time of the Act of Sale.
We therefore hold the note sued on was given for the balance of the purchase price and as partial payment for the purchase of the grocery store, not in exchange for $10,-000.00 cash, and that the terms of the note were modified by the Standby Agreement. The Trial Court erred when he gave judgment on the note; nothing was owed on the note when suit was filed; the note is not due until after payment by Mrs. Arguello of the SBA loan.
For these reasons, the judgment of the Trial Court is reversed. All cost of trial and appeal are to be paid by Mr. Montesino.