451 So.2d 1111 (1984)
AMERICAN BANK AND TRUST COMPANY
v.
SUNBELT ENVIRONMENTAL SYSTEMS, INC., et al.
No. 83 CA 0248.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
On Rehearing June 26, 1984.
*1113 Michael H. Rubin, Baton Rouge, for plaintiff-appellee American Bank & Trust Co.
Robert L. Kleinpeter, Baton Rouge, for defendant-appellant, Sunbelt Environmental Systems Inc., Lynn Foster and James Kelly.
Before PONDER, WATKINS and CARTER, JJ.
WATKINS, Judge.
American Bank and Trust Company, Baton Rouge, sued Sunbelt Environmental Systems, Inc., a Texas corporation not licensed to do business in Louisiana, but doing business in this state, and James Kelly and Lynn Foster, who are domiciled in Texas, under the Louisiana Long-Arm Statute, LSA-R.S. 13:3201 et seq. Basically, the American Bank alleges that Sunbelt is maker of a note in the principal sum of $366,592.96, with interest at a variable rate of 2% above commercial prime, and that Foster is an endorser of the note. American Bank further alleges that both Foster and Kelly executed a Continuing Guaranty as security for the note in the sum of $375,000.00. American Bank seeks to recover the principal sum of the note, interest and 25% attorney's fees from Sunbelt, Foster, and Kelly. Foster and Kelly filed a joint exception to the jurisdiction of the court, which exception the trial court overruled after a hearing. American Bank then moved by separate pleadings for summary judgment against each of the three defendants, using the entire record, including the transcript of the hearing on the exception of Foster and Kelly to the jurisdiction of the court. The trial court granted summary judgment in the sum of $366,592.96 in favor of American Bank and against Sunbelt, Foster, and Kelly, with interest at 2% above commercial prime, and 25% attorney's fees. We affirm the judgment of the trial court in overruling the exceptions of Foster and Kelly to the jurisdiction of the court, but reverse the judgment of the trial court granting summary judgment for American Bank, and remand the case for further proceedings.

JURISDICTION
American Bank contends the courts of this state have jurisdiction over Foster and Kelly under the Long-Arm Statute, LSA-R.S. 13:3201 et seq., and Foster and Kelly contend that due process under the Fourteenth Amendment to the United States *1114 Constitution acts as bar to this state's having jurisdiction, and also that the Long-Arm Statute is not so broad as to confer jurisdiction under the facts presented in this case.
The facts of the case, as established by the trial on the exception to the jurisdiction, the transcript of which, together with exhibits, was used as well by mutual consent of plaintiff and defendants on motion for summary judgment may be succinctly stated as follows.
This suit involves an action by American Bank and Trust Company, Baton Rouge, Louisiana ("American Bank"): on a note against Sunbelt Environmental Systems, Inc., a Texas corporation; against Lynn Foster, a Texas resident, who is a shareholder in Sunbelt, who signed the note on behalf of Sunbelt, who personally endorsed the note, and who gave a continuing guaranty of the note; and James Kelly, a Texas resident who is a shareholder in Sunbelt and who gave a continuing guaranty of the Sunbelt note.
In early 1979, defendants Lynn Foster and James B. Kelly entered into various negotiations with Van Calhoun, Murry Decoteau, and Tom Nolan, residents of Louisiana, concerning the possible structure of a transaction involving several corporations owned by Calhoun, Decoteau, and Nolan. One of the corporations involved was American Environmental Systems, Inc., a Louisiana corporation. At the time of the negotiations, American Environmental Systems, Inc. was indebted to American Bank.
In March 1979, a letter of intent was given in which Kelly and Foster stated they had an interest in buying from Nolan, Calhoun, and Decoteau, stock in Environmental Resources Group, Inc., a Louisiana corporation (indebted to American Bank), which held as wholly owned subsidiaries American Environmental Systems, Inc., a Louisiana corporation, and American Environmental Systems Southwest, Inc., a Texas corporation. Various written drafts concerning the structure of the transaction went back and forth from Foster and Kelly, the Texas purchasers, to Calhoun, Nolan, and Decoteau, the Louisiana sellers.
On April 7, 1979, a draft of the purchase agreement was sent by Foster and Kelly to Nolan, Decoteau, and Calhoun. The draft contemplated an agreement "by and between Lynn Foster and James B. Kelly, on behalf of and as sole owners of a Texas corporation to be formed for the purposes of this transaction."
As the transaction further evolved, Kelly and Foster agreed to purchase assets of American Environmental Systems. As part of the continuing negotiations, Mr. Melvin J. Marque, then a vice-president of American Bank, became involved and traveled with some of the sellers to Houston to meet with both Mr. Foster and Mr. Kelly; American Bank's interest was in visiting those who were negotiating to buy the business and to check the inventory and accounts receivable that were then pledged to secure existing loans at American Bank.
Mr. Kelly later personally came to the Hilton Hotel in Baton Rouge to negotiate with Nolan, Calhoun, and Decoteau in April 1979; Mr. Marque was also present for some of these negotiations. At defendant James Kelly's request, American Bank was asked to consider financing the acquisition by the Texas purchasers.
Eventually the transaction was structured so that Foster and Kelly would form a corporation, defendant Sunbelt Environmental Systems, which would buy the physical assets (but not the incorporeal assets) of American Environmental Systems. As part of the transaction, and in contemplation of American Bank's financing the acquisition, Kelly and Foster sent their personal financial statements to American Bank. During the course of the various negotiations, there were several telephone conferences between Mr. Kelly in Texas and Mr. Marque in Louisiana. In September 1979, there was an attempted closing and on September 20, 1979, a note in the sum of $366,592.26 was signed by Lynn Foster on behalf of Sunbelt Environmental Systems, Inc. No money was ever disbursed on this note by American Bank.
*1115 Finally, in November 1979, Sunbelt Environmental Systems, Inc. through Lynn Foster, President, signed a negotiable promissory note in the sum of $366,592.96 payable to the order of American Bank and Trust Company, payable ninety days after date. Foster endorsed the note personally. This note was signed in Texas and hand-delivered to Melvin Marque, Vice-President of American Bank. Melvin J. Marque had telephone conferences with Mr. Kelly, Mr. Marque being in Baton Rouge, Mr. Kelly being in Texas, concerning the finalizing of the structure of the November closing.
The continuing guaranty of Lynn Foster and James Kelly was signed in Texas guaranteeing the Sunbelt note. As additional security, American Bank received continuing guarantees of the Sunbelt obligation from Decoteau, Nolan, Calhoun, and Bishop.
As part of the transaction and part of the continuing negotiations, Calhoun, Decoteau, and Nolan (the Louisiana sellers), and Richard Bishop (a Texas resident and President of American Environmental Systems Southwest, Inc., an affiliated Texas corporation), had given a non-competition agreement to "James Kelly, Lynn Foster, and/or Dempsey Dumpster Systems, Inc." The non-competition agreement prohibited Bishop, Nolan, Calhoun, and Decoteau from competing with Kelly, Foster or Dempsey Dumpster "within the boundaries of Texas, Oklahoma, or Louisiana for a period of three years" from the date that the transaction was to be consummated. In November 1979, within a week of the closing, Steve Robertson, the attorney for Sunbelt Environmental Systems, Inc. wrote a demand letter to Mr. Bishop seeking to enforce the non-competition agreement, and threatening to attach all funds in the hands of American Bank in Baton Rouge to be paid to Mr. Bishop or for his benefit.
As part of the November closing Mr. Marque, of American Bank, received a letter of instruction from Mr. Steve Robertson, attorney for Sunbelt, detailing how the funds generated by the Sunbelt note should be disbursed in order to comply with the Texas Uniform Commercial Code. This letter read as follows:
"American Bank & Trust Company One American Place, P.O. Box 591 Baton Rouge, LA 70821 Attention Mr. Melvin Marque, Jr.
RE: Trust Instructions, Sunbelt Environmental Systems, Inc., and American Environmental Systems, Inc.
Gentlemen:
Under separate cover you have received Sunbelt's Security Agreement and note in favor of American Bank.
Those documents are delivered to you in trust to accomplish a bulk sale and purchase of certain equipment and inventory from A.E.S. In order to meet Sunbelt's obligations under the Texas Uniform Commercial Code, to give Sunbelt good title to the property and your bank a valid first security interest in the property, the funds generated by the note must be paid out as follows:
1. A.E.S. creditors responding to the bulk sale notice must be paid or satisfied. They are:
a. Airkem, claiming $280.00
b. Allied Industrial, claiming $203,009.82
c. Best Uniforms, claiming $673.54
d. Dempster Dumpster, claiming $65,542.80
e. Fabit Corporation, claiming $1,191.31
f. Fergies, claiming $1,462.66
g. Southwestern Controls, claiming $332.60
h. War-Pak, Inc., claiming $12,108.85
It is our understanding that some of the above claims have been paid or substantially reduced since closing. Before any funds are paid to or for the benefit of A.E.S., you must have in your possession evidence of payment of the above claims or written release of the property and Sunbelt from the claims.
2. Secured creditors, if any, holding liens against the property must be satisfied. *1116 Their satisfaction may be evidenced by tender to you of termination of financing statements against the property.
3. The sum of $14,688.05 which is presently disputed between Sunbelt and A.E.S. involving certain goods listed on the sale inventory but not delivered. We fully expect this small item to be cleared up within ten days.
When the foregoing requirements have been met, you may pay the balance of the funds represented by the note to or for the benefit of A.E.S.
Sunbelt will bear the reasonable expense of obtaining and filing the above releases. Please tender to Sunbelt the release documents set out above with your accounting of disbursements of the funds represented by the note. Sunbelt will cause the appropriate documents to be filed in Texas.
Enclosed for your guidance in accomplishing these instructions, are:
1. Copy of Bulk Sale Affidavit Listing Creditors
2. Copy of Sale of Goods Agreement of July 26, 1979
Please call us if you encounter any difficulties with these instructions. Thank you for your good service. Kindest regards,
McMULLEN, CONNALLY, ROBERTSON,
HOLLIMAN & CAMPBELL, INC.
/s/ Steve Robertson
Steve Robertson
SR:lh
enc.
cc: Sunbelt Environmental Systems,
Inc."
In December of 1979 Mr. Marque left American Bank to become president of People's Bank in New Roads; Mr. Cordell White, Vice-President of American Bank took over the loan and was involved with the funding of the Sunbelt note. Mr. White disbursed funds to various corporations although a dispute exists as to whether or not Mr. Robertson's instructions were followed. The funds were disbursed by means of cashier's checks, and each cashier's check, with the exception of a cashier's check payable to the order of A.E.S., was specifically shown by the testimony to have been cashed, so that the full face amount of the note was funded. After the funds were disbursed, Mr. White of American Bank had various long distance telephone conferences with Foster and with Foster's attorney between January and June, 1980.
No payments were ever received by the Bank on the Sunbelt note. Foster came to Baton Rouge with his attorney to discuss the delinquent status of the Sunbelt note and the demand made by American Bank for payment. The Sunbelt note has never been paid and is in default.
The Long-Arm Statute of Louisiana, LSA-R.S. 13:3201 et seq., and those of other states, were enacted in response to the growth of interstate commerce and increased communication between the states, which new conditions were recognized in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which forms the judicial basis for a broadening of a state's jurisdiction within due process requirements. International Shoe stated the question of whether or not due process was satisfied depended upon the quality and nature of the activity of the defendant in relation to the orderly administration of laws.
In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), it was stated that a defendant must have "minimal contacts" with the state in which the suit is brought to meet due process requirements. In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court elaborated upon the test, stating that foreseeability to the defendant that he should reasonably anticipate being brought into court in the state in which suit was thereafter filed is critical to due process analysis. In both Hanson and World-Wide Volkswagen the Supreme Court found the state court seeking to exercise *1117 jurisdiction failed to meet due process requirements.
However, the factual situation of the present case is somewhat similar to Southern Investors II v. Commuter Aircraft Corporation, 520 F.Supp. 212 (M.D. La.1981), which, citing Standard Fittings Co. v. Sapag, S.A., 625 F.2d 630 (5 Cir. 1980), rehearing en banc denied 631 F.2d 732 (5 Cir.1980), cert. denied, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981), and Product Promotions Inc. v. Cousteau, 495 F.2d 483 (5 Cir.1974), stated that a two-part test is to be applied for determining whether the exercise of in personam jurisdiction would violate due process: (1) there must be a "minimum contact" from an affirmative act of the defendant, (2) it must be fair and reasonable to require the defendant to come into the state to defend the action. As was brought out by the court in Southern Investors II, the "presence" of the non-resident defendant within the state, i.e. his physical presence, at the time the acts giving rise to jurisdiction occurred is not controlling. It was held in Quasha v. Shale Development Corp. 667 F.2d 483 (5 Cir.1982) that even activities outside one state can fulfill the "minimum contacts" test if they have reasonably foreseeable consequences within the state.
Here, Foster and Kelly contend that as they were each in Louisiana on only one occasion, the "minimum contacts" test is not met. However, as we have seen, physical presence is not controlling. Clearly, Foster by endorsing a note payable to a Louisiana bank, and Foster and Kelly by signing a Continuing Guaranty in favor of that same bank, established "minimum contacts" with Louisiana, and should reasonably have anticipated being haled into a Louisiana court in the event of an alleged default in payment. Due process was clearly not violated by the Louisiana court's exercise of jurisdiction. We find due process requirements were met.
However, Foster and Kelly contend that even if due process requirements were met, the requirements of the Louisiana Long-Arm Statute, LSA-R.S. 13:3201 et seq. were not. The requirement of the statute that is relevant to this case is the introductory portion and the thereunder stated sub-section (a) of LSA-R.S. 13:3201:
"A court may exercise personal jurisdiction over a non-resident, who acts directly or by an agent, as to a cause of action arising from the nonresident's:
(a) transacting any business in this state;"
The Long-Arm Statute of Louisiana, it has repeatedly been held, permits the exercise of in personam jurisdiction to the full limits of due process in both contract and tort cases. Se, e.g. Mayeux v. Hughes, 333 So.2d 273 (La.App. 1st Cir.1976); Standard Fittings v. Sapag, S.A., supra, Southern Investors II v. Commuter Aircraft Corporation, supra. Thus, the Louisiana Long-Arm Statute confers jurisdiction in the present case.
Foster and Kelly's exception to the jurisdiction of the court was properly overruled.

SUMMARY JUDGEMENT
We note in passing that by consent of all parties the transcript of the hearing on the exception to the jurisdiction of the trial court was used in deciding the motion for summary judgment. We have qualms about deciding the question of whether or not there exists a genuine issue of material fact (LSA-C.C.P. art. 966) on the basis of the transcript of a hearing held for another purpose, as defendants might have considered it unnecessary or without purpose to introduce evidence as to ultimate liability in a hearing on jurisdiction. However, the parties agreed to use the transcript. In view of the holding we make, we consider it unnecessary to mention the matter further.
Summary judgment may not be granted if there exists any real doubt as to the existence of a genuine issue of material fact. Vermillion Corp. v. Vaughn, 397 So.2d 490 (La.1981). All reasonable doubts are resolved against the granting of summary judgment. Walker v. Graham, 343 So.2d 1171 (La.App.3d Cir.1977). In the *1118 present case, the plaintiff sues for the sum stated on the face of the note, $366,592.96, plus interest and attorney's fees. Yet, Foster testified he received the following two notices from American Bank:

None of the officers of American Bank who testified explained the disparity between the amount stated on the face of the note ($366,592.96) and the $250,000.00 sum which the notices indicated was due. It is true that the affidavit of Richard Wyatt, Assistant Vice President of American Bank, indicates that the note was written down as an accounting matter, but so to indicate does not explain the setting forth of a "Current Balance" of $250,000.00 in a notice to its debtor, who would be ignorant of the accounting practices employed within American Bank.
American Bank made disbursements to American Environmental Systems in the sum of $310,320.22 and $14,688.05, respectively, which disbursements were authorized to be made by Mr. Steve Robertson, attorney for defendants in executing the note, only in the event evidence was received of the payment of other claims listed in Mr. Robertson's letter to American Bank quoted above, or a written release of property and Sunbelt from the claims. The evidence is equivocal as to whether or not such evidence was received in the case of all claims, and clearly no such written release or copy thereof is to be found in the record or exhibits. Indeed Cordell White, Vice President in Corporate Lending at the American Bank at the time the disbursements were made, testified there was a disputed claim between Sunbelt and A.E.S. involving certain goods not delivered by *1119 A.E.S. to Sunbelt. White testified he issued a cashier's check for that amount, which he held in escrow. Yet the check in question, in the sum of $14,688.05, bears bank markings and an endorsement, the presence of which raises a genuine issue of material fact as to whether or not the check was received by A.E.S. and negotiated. As by White's own admission the sum was to be held in escrow, further issues of material fact exist as to whether or not the American Bank properly issued the check, and whether or not therefore full consideration was received by Sunbelt for its having made the note. Also, the record and transcript leave lingering doubts on the question of whether or not evidence was ever received of payment of the other claims outstanding against A.E.S. or a written release was ever obtained, as Mr. Robertson's letter was made a precondition to the release of sums to A.E.S. Thus, a genuine issue of the sufficiency of consideration exists, which can be resolved only by trial on the merits.
American Bank contends that want of consideration cannot be used by Sunbelt as a defense, as want of consideration is of no avail as against a holder in due course. The payee of a note may be a holder in due course. LSA-R.S. 10:3-302(2). However, we see that under the provisions of R.S. 10:3-305(1) a holder in due course does not take an instrument free from all defenses of a party with whom the holder has dealt. Thus, as American Bank has dealt with defendants all defenses available to Sunbelt and Foster may be asserted against American Bank. As there exists a genuine issue as to whether or not there was want of consideration, and as American has dealt with defendants, there exists an issue as to the validity or enforceability of the note sued upon which should not have been decided upon motion for summary judgment. Thus, summary judgment was rendered improperly.
The judgment of the trial court finding jurisdiction is affirmed, but the summary judgment granted below is set aside and reversed, and the case remanded, all costs to await final determination of the matter.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

ON REHEARING
We granted a rehearing because counsel for American Bank argued that failure or want of consideration cannot be a defense against a holder in due course. We have, upon further consideration, come to the conclusion that it is indeed the case that while possibly other defenses may be asserted against a holder in due course by a party with whom the holder in due course has dealt (by negative inference from LSA-R.S. 10:3-305(2)), failure or want of consideration is never a defense as against a holder in due course. See LSA-R.S. 10:3-306(c); Courtesy Financial Services, Inc. v. Hughes, 424 So.2d 1172 (La.App. 1st Cir.1982).
However, Courtesy Financial Services, supra, further holds that if a payee of an instrument takes the instrument from the maker, the payee is not necessarily a holder in due course, but is a holder in due course only if a maker with whom the payee has directly dealt has no valid defenses as against the payee arising from that dealing. As LSA-R.S. 10:3-302(2) states, "(a) payee may be a holder in due course." (Emphasis added) In other words, the status of a holder in due course does not necessarily arise in favor of a payee. Especially is that the case if the party adverse to the payee is the maker of the instrument who has a valid defense, under the holding in Courtesy Financial Services, supra. Furthermore, one is a holder in due course only if he takes the instrument "without notice ... of any defense or claim to it on the part of any person." LSA-R.S. 10:3-302(1)(c). Here, the American Bank clearly took the note knowing there would be a valid defense on the part of Sunbelt if all claims were not discharged in accordance with the instructions of Steve Robertson, counsel for Sunbelt. As we state in our original opinion, it is not clear whether the claims against *1120 AES, Sunbelt's vendor in a sale in which American Bank was intimately involved, were discharged. Hence, under Courtesy, supra, the American Bank was not a holder in due course, and held the note subject to the allegedly valid defense on the part of Sunbelt that American Bank had failed to live up to the terms of the agreement to which it was a party.
We therefore reinstate our original judgment, at the cost of American Bank.
ORIGINAL JUDGMENT REINSTATED.