555 So.2d 595 (1989)
James R. GRAVES, Liquidator of Performance Motor Sports Service, Inc.
v.
John PORTERFIELD.
No. 88 CA 1659.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*596 Karl W. Cavanaugh, Baton Rouge, for plaintiff-appellee James R. Graves, etc.
Richard Upton, Baton Rouge, for defendant-appellant John Porterfield.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
This is a suit on a promissory note. Plaintiff James R. Graves, as Liquidator of Performance Motor Sport Service, Inc. (PMSS), payee of the note, brought suit against defendant, John W. Porterfield, maker of the note. Mr. Porterfield answered the suit alleging failure of consideration and asserting the exception of no right of action. It is undisputed that Mr. Porterfield executed the note on September 29, 1983, for the sum of $2,702.73, payable on demand to payee, PMSS. The note also provides for 10% interest and attorney's fees in the amount of 25%. After trial on the merits the trial court found defendant liable on the note as well as for interest and attorney's fees. Mr. Porterfield has appealed that judgment. We reverse.
Plaintiff contends that the note represents a debt owed for repairs which payee performed on a 1976 Jensen GT vehicle on behalf of Mr. Porterfield and his client, Automobile Construction and Testing Inc. (ACT). On the contrary, Mr. Porterfield contends that he signed the note as security that he would return the vehicle to PMSS after he showed it to Mr. Eddie Anderson, the vehicle owner's attorney. Apparently Mr. Porterfield and Mr. Anderson were attempting to determine a price for which the vehicle could be sold. During these negotiations Mr. Anderson requested to see the vehicle. Pursuant to this request Mr. Porterfield arranged for Mr. Anderson to meet him at Mr. Porterfield's home on September 29, 1983, to view the vehicle. When Mr. Porterfield went to pick up the vehicle from payee's premises, he was required to sign a note to secure the return of the vehicle. He returned the vehicle the same day and requested that the note be destroyed.
The saga of the Jensen GT began in 1981 when its owner, Wilfredo Perez, took it to ACT for repairs. ACT performed extensive repairs totalling $4,500. When ACT was unable to collect the amount of the repairs, it retained the vehicle and hired Mr. Porterfield to perfect a mechanic's lien on the vehicle. Mr. Porterfield filed suit on behalf of ACT against Mr. Perez in April of 1982. On April 22, 1982, Mr. Anderson was appointed as curator for Mr. Perez, who then resided out of state. Thereafter, Mr. Perez agreed to negotiate for the sale of the vehicle in order to pay off a pre-existing *597 mortgage on the vehicle, the repair debt owed to ACT, and the attorney's fees of Mr. Anderson and Mr. Porterfield. Pursuant to this agreement Mr. Perez gave Mr. Anderson power-of-attorney to sell the vehicle on his behalf.
During this time ACT was voluntarily liquidated by its owners. During the liquidation ACT sold some of its assets to PMSS, which was formed in 1981, and began its operations in the building formerly occupied by ACT. When ACT ceased business operations, the Jensen GT continued to remain on the premises, and when PMSS moved to a new location in September of 1982, the Jensen GT was moved also. PMSS began charging storage fees for the Jensen GT after the move. Thereafter PMSS began making repairs on the Jensen GT over a ten-month period of time beginning in November of 1982 and ending in September 1983. The repairs, storage fees, and service charges totalled $2,702.73, and they were billed on open account to ACT and John Porterfield.
The evidence presented by the plaintiff establishes that on September 29, 1983, Mr. Porterfield signed a promissory note for the amount of the repairs to the Jensen GT, and the storage and service fees in connection therewith. The only witnesses to testify on plaintiff's behalf were the plaintiff, Mr. Graves, and his wife, Claire Graves, who was the majority shareholder of PMSS. Mr. and Mrs. Graves testified that neither of them was involved in the day-to-day operations of PMSS, nor did either of them have any personal knowledge of the circumstances surrounding the execution of the promissory note by Mr. Porterfield. Mrs. Graves admitted knowing nothing about the note until she noticed a discrepancy in the books which she monitored for PMSS. The plaintiff introduced and filed into evidence the note, but was not permitted to file into evidence the invoices for the repairs as they were not contained in the plaintiff's pre-trial statement. Mrs. Graves testified that she "believed" that Mr. Porterfield ordered the repairs; however, she admitted to having no direct knowledge of who requested the repairs.
Mr. Porterfield testified that during his efforts to sell the Jensen GT on behalf of ACT, a Dr. Mallion became interested in purchasing it. However, before any price could be agreed upon Mr. Anderson requested to view the vehicle in order to determine its worth. Mr. Porterfield testified that when he went to pick up the vehicle he was asked, by a woman he believed to be Mrs. Graves, to sign a promissory note for the amounts owing to PMSS before he could remove the vehicle from the PMSS premises. Mr. Porterfield signed the note so that he could take the Jensen GT to his home to show it to Mr. Andersonn. When he returned the Jensen GT, later that day, the woman to whom he gave the promissory note was no longer at PMSS; he told a mechanic, whom he could not identify, to destroy the note. Mr. Porterfield also testified that prior to signing the note he never received a bill from PMSS concerning the repairs to the Jensen GT.
Mr. Anderson corroborated Mr. Porterfield's testimony regarding his request to view the vehicle and the fact that on September 29, 1983, he did view the vehicle at Mr. Porterfield's home. Mr. Anderson also recalled receiving an offer to purchase the vehicle sometime in September or October of 1983.
The final witness to testify was Mr. Richard Fitzgerald. Mr. Fitzgerald was previously the manager/mechanic for ACT and thereafter became the president and general manager of PMSS.[1] Mr. Fitzgerald testified that the repairs to the Jensen GT were made at the request of Dr. Ronnie Mallion, a prospective buyer of the Jensen GT. According to Mr. Fitzgerald, Dr. Mallion offered approximately $8,000-$8,500 for the Jensen GT as long as it was in good working order. Mr. Fitzgerald further testified that he personally authorized that these requested repairs be made on behalf *598 of ACT. Mr. Fitzgerald also testified that in May of 1983 Dr. Mallion paid $679.68 on the open account of ACT for repairs made to the Jensen GT. Unfortunately, some time after this payment was made, Dr. Mallion died.
Mr. Fitzgerald also corroborated Mr. Porterfield's testimony that the Jensen GT was, in fact, returned to PMSS after Mr. Porterfield signed the promissory note on September 29, 1983. Thereafter PMSS ceased doing business, and Mr. Fitzgerald moved the Jensen GT to his newly formed corporation, Europa Motor Sports, where the vehicle was allegedly stolen.
On appeal Mr. Porterfield alleges that: (1) the trial court erred in placing the burden of proving consideration upon the maker of the note,[2] and (2) the trial court erred in denying defendant's peremptory exception of no right of action. The plaintiff contends that the note represented an antecedent debt owed by a client of the defendant and thus the defendant may not avail himself of the defense of failure of consideration. Plaintiff cites LSA-R.S. 10:3-408, which reads in pertinent part as follows:
Want or failure of consideration is a defense as against any person not having the rights of a holder in due course, except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. (Emphasis added.)
"Failure of consideration is defined as consideration which originally existed which was not performed or which failed thereafteras opposed to want or lack of consideration, which is no consideration at the time the instrument was given." (Citation omitted.) Progressive State Bank & Trust Co. v. Stutts, 516 So.2d 1207, 1210 (La.App. 2d Cir.1987). The defense of failure of consideration may not be asserted against a holder in due course. American Bank and Trust Co. v. Sunbelt Environmental Systems, Inc., 451 So.2d 1111 (La.App. 1st Cir.1984). The plaintiff has neither alleged nor asserted that it is a holder in due course.[3] Thus, the defense of failure of consideration may properly be asserted against the plaintiff.
In a suit on a promissory note, parol evidence is admissible to prove the defense of failure of consideration. Montesino v. Arguello, 433 So.2d 383 (La.App. 4th Cir.1983). The payee who produces the note sued upon makes out a prima facie case and will be given the presumption that the instrument was given for value received[4] unless the maker casts doubt upon the reality of the consideration. Once the maker casts doubt upon the consideration, the ultimate burden shifts to the payee to prove consideration by a preponderance of the evidence. Montesino v. Arguello, 433 So.2d 383; Courtesy Financial Service, Inc. v. Hughes, 424 So.2d 1172 (La.App. 1st Cir.1982).
*599 Although consideration granted to another (i.e. ACT) amounts to consideration to a maker, it is the defendant's position that the consideration for the note was not to pay the antecedent debt of ACT but was the use of the vehicle which he returned. Although a naked denial by the maker of a note, unaccompanied by any other explanation or corroborating circumstances, might not be sufficient to cast doubt upon the reality of the consideration, the maker's testimony, supported with surrounding facts, may be sufficient to rebut the presumption of valid consideration and place back upon payee the burden of proving consideration by a preponderance of the evidence. See Tatum v. Four Pac Oil & Chemical Corp., 132 So.2d 569 (La.App. 3d Cir.1961). The defendant testified that he did not sign the note as payment of the antecedent debt, but to provide security to PMSS while he took the Jensen GT off its premises. This testimony is supported by the following facts, to-wit: (1) the defendant's only interest in the vehicle was the possibility that he would recover attorney's fees for his services in selling the vehicle, (2) Mr. Anderson testified that the defendant showed him the Jensen GT at defendant's home on September 29, 1983, the date defendant signed the note, and (3) the defendant returned the vehicle to PMSS. We find this evidence sufficient to cast doubt upon the issue of consideration, thereby requiring the plaintiff to prove consideration by a preponderance of the evidence.
The plaintiff contends that the note represented an antecedent debt, thus precluding the defense of failure of consideration. Although consideration is not necessary for a note given in payment of or as security for an antecedent debt, once the maker has cast doubt upon the reality of the consideration, the payee must then prove by a preponderance of the evidence that the note represented an antecedent debt. The evidence presented on the issue of whether the note represented an antecedent debt was the testimony of Mrs. Graves stating that the amount of the note was identical to the amount owed on the open account of ACT and John Porterfield for repairs to the Jensen GT. The defendant does not contradict this fact; however he denies the fact that he signed the note for the purpose of paying the debt. Additionally, the fact that the amount of the note equals PMSS' interest in the vehicle is no less consistent with defendant's version as with plaintiff's.
The mere existence of an antecedent indebtedness owed to PMSS by ACT and John Porterfield does not conclusively establish that the execution of the note was intended, as between the parties, as an acknowledgment of this debt or payment or security therefor. It is the intention of the parties, the motive or cause for the execution of a note, which determines the purpose for which it is given, and, consequently, whether or not it was consideration for this particular note. See Neubauer v. Thiac, 264 So.2d 293 (La.App. 1st Cir.1972).
The unrebutted evidence presented by the defendant casts serious doubt on the reality of the consideration of the note. The plaintiff failed to offer any evidence to rebut defendant's contentions. Considering the evidence as a whole, we find that the plaintiff failed to establish consideration by a preponderance of the evidence. We therefore reverse the judgment of the trial court finding the defendant liable for the promissory note.
In view of the foregoing conclusions, there is no necessity for discussion of defendant's exception of no right of action.
For the reasons set forth we reverse the trial court and dismiss plaintiff's claims against defendant, John Porterfield. Costs to be paid by plaintiff-appellee.
REVERSED.
NOTES
[1] Mr. Fitzgerald also testified that at one time he was a shareholder in ACT and that after he became president of PMSS, he held proxies for one hundred percent of the voting shares for three years.
[2] We are unable to determine from the trial court's oral reasons for judgment the legal principles it applied to the facts of the instant case. We are therefore unable, in light of the legal presumptions and varying burdens of proof involved in this suit, to give its findings the usual deference attributed to trial court findings. See Bloxom v. Bloxom, 512 So.2d 839 (La.1987).
[3] A holder in due course is a holder who takes the instrument (1) for value, (2) in good faith, and (3) without notice that the instrument is overdue or has been dishonored or of any defense or claim affecting the instrument. LSA-R.S. 10:3-302. Although a payee may be a holder in due course, this status is not automatic. When a payee has dealt directly with the maker he will usually have notice of defenses and claims by the maker which will preclude status as a holder in due course. Courtesy Financial Services, Inc., 424 So.2d 1172. See also American Bank & Trust, 451 So.2d 1111. LSA-R.S. 10:3-305(2).

In the present case, the payee, PMSS, through its agent, was an immediate party to the transaction and was aware of the maker's defense of failure of consideration. LSA-R.S. 10:3-306(c). Thus, payee is not a holder in due course.
[4] We note that although The Commercial Laws of LSA-R.S. 10:1-101 do not specifically state the presumption of former LSA-R.S. 7:24 (that consideration is presumed for a note), the jurisprudence has continued to apply this rule with the defendant free to cast doubt on the consideration, thereby shifting the burden back to the payee to establish consideration by a preponderance of the evidence. Montesino v. Arguello, 433 So.2d 383 (La.App. 4th Cir.1983). See also Courtesy Financial Services, Inc., 424 So.2d 1172.