LOTTINGER, Judge.
Plaintiff-appellee, James E. Hundemer, sued defendant-appellant, Leo J. Theriot, on a $20,000 promissory note on which plaintiff was the payee and defendant the maker. The defendant filed a third party demand against Speedy O. Long alleging that the note was given for the benefit of Long.
The Lower Court rendered judgment in favor of plaintiff and against defendant in the sum of $20,000 with interest at the rate of 7% per annum from November 3, 1971, being the date of the note, until paid, and reasonable attorney fees in the amount of 20% of principal and interest due. The Lower Court dismissed the defendant’s third party demand against Speedy O. Long. Defendant appealed, and plaintiff answered the appeal asking that the attorney fees be increased to an amount of not less than 25% of the principal and interest due on the note and that the Court fix an award for expert witness fees of not less than $150 each for two attorneys who appeared as expert witnesses in behalf of plainti f f-appellee.
The Lower Court gave no reasons for judgment. Most of the evidence is uncon-tradicted; however, some of the testimony as to the details surrounding the transfer of the promissory note in question is in conflict. Hundemer was in charge of public relations and advertising for the Speedy O. Long gubernatorial campaign in 1971. Mrs. Speedy O. Long is the niece of the defendant Leo J. Theriot. Plaintiff had advanced funds in excess of $20,000 to the Long campaign out of his own checking account and had been given a check by Speedy O. Long in the amount of $20,000 to cover these expenditures. The check would not clear Long’s account because of insufficient funds on more than one occasion that it was deposited by plaintiff. Leo J. Theriot was involved in campaigning for Long, and though the exact manner in which the meeting of plaintiff and defendant occurred when the promissory note was given is not certain, the following is not disputed. Defendant gave plaintiff a $20,000 promissory note dated November 3, 1971, which note was on a note form and the blanks completed in the handwriting of defendant. The note was completed with the exception of the blanks for interest and attorney fees. The interest rate blank was specifically left blank, according to the testimony of both parties, so that plaintiff could use the note as collateral on a note of his own at a bank of his choice and that bank could fill in the interest rate blank at the same rate of interest provided in the note signed by plaintiff. There was no discussion as to what should be placed in the blank for attorney fees, and that blank remains incomplete through the present time. Plaintiff did take defendant’s promissory note and pledge it at a Baton Rouge bank, which bank filled in the interest rate with 7 per cent according to the agreement of the parties. Plaintiff gave Speedy O. Long credit for $20,000 on the expenditures owed by Long to him. Plaintiff testified that he still had the promissory note in question pledged to the Baton Rouge bank through the time of trial, and that he had possession of it with the bank’s permission and for the purpose of evidence in this suit. At this point, the conflict between the testimony of the plaintiff and the defendant begins.
Plaintiff testified that the note was given to him under the following circumstances. Plaintiff had been sent by Long to Leo J. Theriot with the impression that Theriot was going to give him $20,000 in cash. Plaintiff testified that defendant said he did not have the cash and would give him the note to use to cover the deficiency in his own account as a result of the expenditures on the Long campaign. Plaintiff believed that defendant would receive the money to pay and would pay the promissory note in some four to six months as the result of funds received from the sale of lumber or timber.
Defendant on the other hand testified that he knew of the $20,000 that plaintiff *125 had expended out of his own account for the benefit of the Long campaign. He testified that the promissory note was not given for the benefit of the Long campaign, but that plaintiff knew the defendant and was giving the note as a vehicle which he could use to borrow money. Defendant testified that he had done this and co-signed notes for people whom he knew. Defendant maintained that his note was not given to reimburse plaintiff for the Long indebtedness but only as a good turn so that plaintiff could borrow working capital for his business. •
Plaintiff had two attorneys testify as expert witnesses which testimony was that 25% attorney fees could be considered reasonable on a promissory note such as the one in question.
We do not know how the Lower Court interpreted the evidence, but at this point it is necessary only that we find the holding of the Lower Court not manifestly erroneous. To do so, we must reconstruct the evidence as the Trial Court might have done. We believe that it is most likely that the Lower Court found that the promissory note was given by Theriot to plaintiff for the purpose of covering the expenditures of plaintiff in behalf of Long whose wife was defendant’s niece. Though this was not consideration to Theriot directly, it is well settled in Louisiana that a person receives consideration by having some consideration granted to another. Therefore, the legal consideration which Theriot received was to have $20,000 credited to plaintiff’s account receivable in the name of Speedy O. Long. The defense of lack of consideration is the only one raised by defendant. On the question of interest, there is no doubt that a blank filled in subsequent to the making of the note, if done with the approval and instructions of the maker, is binding on the maker. However, we cannot agree with the Lower Court on the awarding of attorney fees. The note reads, to pay, additionally, as attorney’s fees, per cent . . .' . ” The note m no way provides for reasonable attorney fees, and the attorney fee blank is incomplete even at this time. It is elementary law that attorney fees can be awarded only if provided for by a contract such as in a promissory note or provided for by statute. Of course, attorney fees have been awarded in some few cases as a type of damages. Counsel for plaintiff makes much of defendant’s answer to an interrogatory propounded to him which in describing the note in question states that it provides for reasonable attorney fees. Defendant admits signing the note described in said interrogatory. We are not overly impressed by this argument. We must be governed and controlled by the promissory note which speaks for itself in failing to provide for attorney fees. There is no reason to award attorney fees in the case before us, and therefore we must amend the Judgment of the Lower Court in this respect.
In plaintiff’s answer of the appeal a request was made for expert witness fees for two attorneys who testified on the issue of what should be considered reasonable attorney fees on the note in question. The Lower Court made no award to these expert witnesses. In the case of Maturin v. Scotty Brick Co., 292 So.2d 859 (1st Cir. 1974, writs refused June 7, 1974) it was held that the trial court erred in failing to award expert witness fees to a physician whose testimony related mainly to traumatic epilepsy which was found by the court not to be causally connected to the accident. Likewise in Glass v. Aetna Casualty and Surety Company, 166 So.2d 552 (4th Cir. 1964) the court held that the fee of an expert should be taxed as costs even though the expert’s opinion was not accepted by the court and even though, on the issue concerning which he testified, the opponent was successful. .Therefore, we will amend the Judgment of the Lower Court to fix expert witness fees at $75.00 for each of the two attorneys who testified for plaintiff on the issue of attorney fees, namely Charles J. LeBlanc and Clyde C. *126 Caillouet, said amounts to be taxed as costs.
We now come to the third party demand against Speedy O. Long. From the evidence presented the Lower Court might have found that the note given by defendant was a campaign donation. A finding of donation would seem to preclude liability in quasi contract or negotiorum gestio. Neither Theriot nor Long offered any evidence to show that Long knew the note was being given when it was delivered to Hundemer. Furthermore, there was no evidence that when Long found out about the note that he ratified said act or agreed that he would satisfy same. We think that rejection of the third party demand is in accordance with the evidence or lack of evidence in the record.
For the above and foregoing reasons, the Judgment of the Lower Court is amended to exclude attorney fees therefrom and to fix expert witness fees at $75 for each of the two attorneys who testified on behalf of plaintiff, and as amended the Judgment of the Lower Court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Amended and affirmed.