SEXTON, Judge.
The plaintiff appeals the rejection of its demands against the defendant on a promissory note in the amount of $20,524.56, together with appropriate interest and attorney’s fees. We affirm.
The note at issue was signed by L.W. Stutts, Sr. on April 11, 1984 and made payable to the plaintiff. On that same date, L.W. Stutts, Sr. endorsed in blank a cashier’s check of the plaintiff made payable to Comet Rice, Inc. and L.W. Stutts in the amount of $20,524.56.
No payments were forthcoming on the note signed by L.W. Stutts, Sr. and this litigation was initiated on April 17, 1985. The defendant answered asserting that there existed a failure of consideration on the note.
In June of 1983, Triple Eight, Incorporated, a corporation devoted to the farming of rice and owned by the four sons of Mr. Stutts, Sr., assigned a quantity of PIK (payment in kind) rice to the plaintiff, Progressive State Bank, in satisfaction of certain obligations to the bank. The bank then sold the rice to Comet Rice, Inc. in South Carolina. Apparently as a result of accounting errors, Comet overpayed the plaintiff for the rice it purchased in the amount of $20,524.56 by virtue of payments made to the bank on December 7, 1983 and March 20,1984. The bank deposited the excess to the account of Triple Eight.
In the meantime, on January 3, 1984, Triple Eight, Inc. and the plaintiffs four sons filed for relief under Chapter 11 of the United States Bankruptcy Code, which froze the account of Triple Eight. The defendant has never had an interest in Triple Eight.
Not long thereafter, on January 24,1984, Comet addressed a letter to Mr. Robert D. McCaleb, vice president of the plaintiff bank, outlining and documenting the circumstances of the overpayment and requesting repayment thereof. Apparently, these efforts continued to no avail because on April 4, 1984, the attorney for Comet addressed a letter (D-4) on a first name basis to the attorney for the bank lamenting the bank’s failure to repay the overpayment as the bank had previously promised and implying that a suit for “willful conversion” would be forthcoming.
In the further meantime, in early February, 1984, the loan committee of the plaintiff bank had approved a crop loan for Danny E. Stutts, one of the owners of Triple Eight, Inc. and a son of the defendant. However, the committee left the final decision on the granting of the subject loan to the discretion of the bank’s president, Mr. George Cummings. Danny Stutts testified that he went to the bank with his wife on April 11th to close out that crop loan at which time he received considerable pressure to sign a note in the amount of the overpayment which Comet had made to the bank. He stated that he was reluctant to do so because he thought the fact that he was in bankruptcy made it inappropriate for him to sign such a note. He went on to state that he was in the bank discussing the matter for some two hours and the loan was not forthcoming. During this time, at the behest of the bank officials, he attempted to locate his father whom they suggested might be willing to sign a note in the amount of the overpayment, but he was unable to locate his father. Danny Stutts further testified that when he left the bank, he was advised that he would be notified regarding his loan. After his father signed the note at issue, Danny Stutts was denied the crop loan, which he later obtained from the Farmers Home Administration.
His testimony was confirmed by his wife, Hilda, who stated they had gone to the bank for the purpose of obtaining their crop loan, and that she waited in the car for her husband for some two hours. He had told her that he would come get her *1209 when it was time to finalize the loan but he never did so.
Mr. Stutts, Sr. testified that on the date he signed the note he first received a telephone call at his home from the president of the bank, Mr. George Cummings. He then traveled 32 miles from his residence to the bank where he agreed to sign the note. He said he did so after discussions with Mr. Cummings based on the understanding that the note was a prerequisite for his son Danny to receive his previously approved crop loan from the plaintiff bank. He stated he specifically told Mr. Cummings that he had no way of repaying the bank and that it was his understanding that the bank would be repaid out of crop proceeds earned by either Danny or Triple Eight.[1]
Mr. George Cummings testified that other than a brief conversation with Mr. Stutts, Sr., he had no part in the making of the note at issue. He stated the transaction was handled by the bank vice president, Robert D. McCaleb, Jr. However, Mr. McCaleb stated that Mr. Stutts, Sr. signed the note in Mr. Cummings’ office outside of his presence. He stated he initialed the note shortly thereafter and processed it, after labeling it an “agribusiness” loan.[2]
The trial court filed an extensive written opinion detailing the facts of the case. Therein the court resolved the contradictory evidence in favor of the defendant and specifically found “that PSB granting defendant’s son a crop loan was the consideration for L.W. Stutts, Sr. to sign the promissory note. The court also finds that PSB did not grant Danny Stutts a crop loan.” The trial court thus rendered judgment rejecting the demands of the plaintiff bank.
The bank’s appeal presents the single assignment of error that the trial court erred in finding “a failure of consideration.” The bank specifically argues that the defendant received the proceeds of the loan as evidenced by the check jointly made out to the defendant and Comet, and that the defendant freely and voluntarily endorsed these proceeds over to Comet. Thus, the bank contends that the disbursement of the loan proceeds satisfies the requirement of consideration. Additionally, in further arguing its single assignment, the bank contends that the trial court erred in its credibility determinations.
Of course, the trial court factual findings based on credibility determinations are entitled to great weight and are not to be disturbed by an appellate court unless clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Davis v. Winningham Datsun-Volvo, Inc., 493 So. 2d 719 (La.App. 2d Cir.1986). Upon our review of the record, we have no difficulty determining that the trial court was not clearly wrong in its factual conclusions. We will therefore proceed to evaluate this case on the single legal issue of whether under the factual determinations of the trial court, a failure of consideration occurred on the note at issue.
In sum, the circumstances presented are that the defendant maker signed this note payable to the plaintiff representing an amount owed to the plaintiff by a third person, a corporation in which the maker had no interest. The sole reason the maker signed the note was so that yet another person, the maker’s son, would receive a personal loan for the operation of his agricultural business. This loan was not forthcoming. Furthermore, the corporation owing the obligation was in bankruptcy and the obligation could only be satisfied through the bankruptcy proceedings.
*1210 There is no doubt that consideration granted to another amounts to consideration to a maker. Hundemer v. Theriot, 312 So.2d 123 (La.App. 1st Cir.1975), writ denied, 313 So.2d 845 (La.1975), writ denied 313 So.2d 848 (La.1985).
The defendant’s position with respect to lack of consideration, and that accepted by the trial court, is that the consideration for the note was the crop loan which was not made. Thus, the defendant contends that there is a “failure of consideration.” Failure of consideration is defined as consideration which originally existed which was not performed or which failed thereafter — as opposed to want or lack of consideration, which is no consideration at the time the instrument was given. Smith v. Louisiana Bank and Trust Company, 272 So.2d 678 (La.1973); Paletou v. Sobel, 185 So.2d 95 (La.App. 4th Cir.1966).
In a case somewhat similar to the instant case, Republic Finance of Gramercy, Inc. v. Davis, 289 So.2d 891 (La.App. 4th Cir. 1974), the defendant signed a second note with the plaintiff finance company representing sums he owed that company on a previous note secured by a chattel mortgage on various furniture and household goods. The second note was signed subsequent to the defendant’s filing for bankruptcy. The opinion states that the consideration therefor was the “immediate, unqualified and unrestricted right of possession” of the furniture and household items secured by the previous mortgage, as the defendant had need to immediately move to New Orleans. Shortly thereafter, as the defendant was packing, the trustee in bankruptcy arrived and took possession of all of the furniture and appliances which were the subject of the chattel mortgage.
Observing that there could be only one “primary consideration” for the note and that the consideration in this case was the furniture rather than the moral obligation resulting from the bankruptcy proceeding, the court held that once the defendant lost his furniture there was no consideration.
In reaching this determination, the court relied on X-L Finance Company, Inc. v. Gregoire, 217 So.2d 463 (La.App. 1st Cir. 1968). In that case, the defendant at issue, Mr. Wilson, had been discharged in bankruptcy before he signed the note at issue. At the time he filed for bankruptcy, he owed the plaintiff a note secured by a second mortgage on his home. This property was disclaimed by the trustee because of the encumbrances.
Wilson and X-L entered into an agreement whereby Wilson abandoned the property to X-L. X-L did not want to be shown as the owner so that it could avoid liability on the first mortgage. X-L, however, rented the property and attempted to find a buyer therefor. For some reason, which is not clear from the opinion, Wilson signed two notes in furtherance of this process of satisfying his obligation to X-L, with the understanding that he would not have to pay the notes and they would be canceled upon the sale to a prospective buyer X-L had located. However, the buyer did not qualify for financing and eventually X-L sued Wilson on the two notes. X-L’s demands were rejected on the basis that the true consideration for the notes was X-L’s undertaking to locate a buyer and sell the property and to terminate Wilson’s obligation on the notes. Thus, the court determined that consideration had failed in the following terms:
Inasmuch as the efficacy of the notes was contingent upon a performance which did not take place the demand for payment thereof may be successfully resisted. Pertuit v. Weinberg, La.App., 134 So.2d 652.
X-L Finance Company, Inc. v. Gregoire, supra, at 467.
We find a remarkable similarity between X-L Finance, supra, and the instant case, and agree with the rationale of the cited case. In each, the understood and intended specific purpose that precipitated the giving of the note could not be or was not performed, resulting in a failure of consideration.
We therefore determine that on the facts found by the trial court, that court correctly determined that there was a failure of consideration on the note sued on and thus correctly rejected the demands of the plain *1211 tiff. LSA-R.S. 10:3-408. The judgment appealed is affirmed at appellant’s cost.
AFFIRMED.

. He understood the loan was to be repaid by Danny personally, the corporation or a combination thereof. Mr. Stutts, Sr. testified "they had all split up by then” and "were out on their own." Furthermore, it is unclear whether the conversations Mr. Stutts, Sr. was referring to occurred on the telephone or were in the bank offices. We gather it was a combination of the two.

. Interestingly, Mr. McCaleb testified that the bank had received information about the Triple Eight and Stutts brothers’ bankruptcy filing at about the time the proceedings were initiated, which would have been prior to the receipt of the second payment from Comet. Also of interest is that he stated that to his knowledge no proof of claim was filed by the bank in the bankruptcy pleadings.