JAMES F. MCKAY III, CHIEF JUDGE
*268 Defendant, Jessie L. Conerly ("Conerly"), appeals the trial court's July 6, 2017 judgment, granting a motion for partial summary judgment in favor of plaintiff, Ramon V. Jarrell ("Jarrell"). For the reasons that follow, we reverse and remand.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
On June 30, 2014, Conerly and Jarrell entered into a business venture as reflected in the following Letter of Intent:[1]
This Letter of intent is between Ramon V. Jarrell of Country Club of Louisiana, 18019 East Augusta Drive, Baton Rouge, LA and Jessie Conerly of 7470 Cambereley Drive, New Orleans, LA 70128 for the sole purpose of the extraction and sale of the natural resources of sand, gravel, and clay present on the land which we expect will be bought by K & M, LLC from Marion Clay & Gravel, LLC.
The two parties desire to form a limited liability company, K & M, LLC, as a minority owned company located at 1957 Highway 43, Columbia, MS 39429. The land, from which the aggregate materials will be extracted, consists of 872 acres along the Pearl River.
It contains large amounts of the natural resources referenced above, and will be used as collateral, along with aggregate contracts provided by buyers of product, for any debt incurred on behalf of K & M, LLC. At the satisfaction of all LLC indebtedness and dissolution of the LLC, the land reverts to Conerly.
The following stipulations serve as operational underpinnings for this partnership that define the duties of the members, along with the distribution of profits generated by the operation.
1. Jarrell will own 48% of the company, K & M, LLC,
2. Jarrell will arrange for the securement of $6.8 million in start-up capital for the purpose of buying out four original members [of Marion Clay & Gravel, LLC] with ownership percentages as follows:
Harry Varnadoe, H. Varnadoe Enterprises, LLC-27.5%, William Myles-28.75 %,
Mark Denis, Denis-Bates Enterprises, LLC-5%, Stan Hutson, ES Services, LLC-10%.
Additional uses of funds include operational start-up, equipment.
3. Jarrell will receive 50% of the profits generated,
4. Jarrell will provide oversite [sic ] and have access to all records and aspects of the operation,
5. Conerly will own 52% of K & M, LLC for the purpose of acquiring Certification as a Minority owned business which leverages the marketing function,
6. Conerly will provide daily operational management and oversite [sic ] aspects of the operation,
7. Conerly will receive 50% of the profits generated.
Subsequent to the execution of the Letter of Intent, Jarrell began advancing capital to Conerly. In connection therewith, Conerly issued four promissory notes to Jarrell, as follows:
Note I dated July 11, 2014, in the principal amount of $40,000.00;
*269 Note II dated August 4, 2014 in the principal amount of $20,000.00;
Note III dated August 19, 2014 in the principal amount of $22,000.00;
Note IV dated September 9, 2014 in the principal amount of $22,000.00.
Each note further provides for payment terms, interest, and attorney's fees.
In July 2016, Jarrell filed suit, alleging that Conerly failed to pay the balance due on the four notes. Jarrell maintains that the promissory notes represent funds "loaned" to Conerly for the business venture.
Conerly answered the petition, acknowledging that the notes had not been paid in full.[2] He stated, however, that Jarrell advanced the funds with the understanding that the funds would be paid back from the profits of the business venture, not from Conerly personally. Conerly further asserts in his answer that Jarrell breached the Letter of Intent by failing to arrange for the securement of $6.8 million in start-up capital for the venture, as he agreed to do. In the alternative, Conerly claims that he is entitled to a set-off due to Jarrell's breach of contract.
Conerly also filed a reconventional demand, alleging that the venture fell through as a direct result of Jarrell's breach of contract. Conerly's reconventional demand seeks damages from Jarrell for loss of anticipated profits and income.
Jarrell filed a motion for partial summary judgment, asserting his holder in due course status. He alleges therein that Conerly did not set forth any of the available defenses allowed against a holder in due course as provided by La. R.S. 10:3-305. Accordingly, Jarrell sought to enforce the promissory notes.
Conerly opposed the motion for partial summary judgment, arguing that there are genuine issues of material fact as to whether the consideration for the notes (Jarrell's procurement of the start-up capital) failed. Conerly also denies that the funds represented a loan, asserting instead that the parties intended the notes to be simulations. Thus, he maintains that there are genuine issues of fact as to the parties' intent.
The matter was heard June 30, 2017. The trial court rendered judgment July 6, 2017, granting a partial summary judgment in favor of Jarrell, and awarding Jarrell damages in the amount of the principal of $104,000.00, plus interest, attorney's fees, and costs.[3] Conerly's timely appeal followed.
STANDARD OF REVIEW
"Appellate courts review summary judgments de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Hogg v. Chevron USA, Inc. , 2009-2632, 2009-2632, p. 5 (La. 7/06/10), 45 So.3d 991, 996 (citing Schroeder v. Board of Supervisors of LouisianaState University , 591 So.2d 342, 345 (La. 1991) ). "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966A(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is *270 entitled to judgment as a matter of law." La. C.C.P. art. 966A(3).
LAW AND ANALYSIS
In granting the motion for partial summary judgment from the bench, the trial court stated:
I believe that plaintiff [Jarrell] is considered a holder in due course and defendant [Conerly] is allowed to assert defenses to the holder in due course. I don't believe those defenses have been asserted. Now, you do claim that there are other defenses. You are still allowed to assert that, but those defenses do not preclude the partial motion for summary judgment here, which I am granting.
On appeal, Conerly asserts that the trial court erred in granting the motion for partial summary judgment because: 1) Jarrell was not a holder in due course of the notes, and thus, his claims were subject to Conerly's defenses of failure of consideration, simulation, and alternatively, set-off; 2) Conerly's countervailing summary judgment evidence sufficiently casts doubt on whether consideration for the notes failed and whether they were simulations; 3) There are material issues of fact as to whether the notes are unenforceable for failure of consideration and whether they are absolute simulations as to preclude summary judgment. Because Conerly's three assignments of error are intertwined, we will discuss them together herein below.
At the outset, Conerly argues that Jarrell is a holder, but not a holder in due course of the promissory notes in question. We find that assertion to have merit.
La. R.S. 10:1-201(21)(A) defines a holder as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."
Pursuant to La. R.S. 10:3-302(a), a holder in due course is the holder of an instrument that does not have a question as to its authenticity, and the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any property or possessory claim to the instrument, and (vi) without notice that any party has a defense or claim in recoupment.
Against a holder in due course, the maker is limited to certain defenses set forth in La. R.S. 10:3-305, which provides, in pertinent part:
(a) Except as stated in Subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:
(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;
Conerly does not raise any of the defenses allowed against a holder in due course. Rather, he asserts failure of consideration and simulation, which can only be asserted against a holder. Alternatively, Conerly claims set-off for the damage claim asserted in his reconventional demand.
*271 Jarrell is the original payee on the four notes. However, it is well settled in our jurisprudence that a payee on a note is not automatically a holder in due course. As explained in Watson v. Matranga , 613 So.2d 711, 713 (La. App. 5 Cir. 1993),
Prior to the enactment of Title 10 of the Louisiana Revised Statutes in 1975, a payee could not be a holder in due course. Now, a payee may be a holder in due course. See LSA-R.S. 10:3-302(2), also Courtesy Financial Services v. Hughes , 424 So.2d 1172 (La. App. 1 Cir.1982), wherein the court said Id. , at 1175 :
"Although a payee may be a holder in due course, said status is not automatic. When the payee deals with the maker through an intermediary (remitter) and does not have notices of defenses, such an isolated payee may take as a holder in due course. In most instances, however, a payee will not be a holder in due course because said payee will usually have notices of defenses and claims by virtue of the fact that he has dealt directly with the maker."
* * *
We are unaware of any Louisiana case, and none has been cited by appellant, holding that a payee on a promissory note who had constant, direct and meaningful contact with the maker can somehow assume holder in due course status, particularly if the payee had sold an interest in a company he helped found, worked for and partially owned. Such a payee cannot be a holder in due course.
Here, the record reflects that Jarrell was closely involved in the original business venture. The Letter of Intent, which Jarrell signed, provides that: 1) Jarrell and Conerly agreed to form an LLC in order to acquire the Marion property and extract materials from the land; 2) Jarrell would be responsible to secure the $6.8 million in start-up capital; 3) Jarrell would own 48% of the LLC; 4) Jarrell would receive 50% of the profits from the venture; and 5) Jarrell would oversee the operation and have access to all records in connection with the operation.
Given Jarrell's status as a payee, and his personal involvement in the formation and operation of the business venture, Jarrell is not a holder in due course. At the very least, there are questions of material fact on this issue. Moreover, because Jarrell is not a holder in due course, the notes are subject to the defenses advanced by Conerly, such as failure of consideration and simulation.
It is well established that "summary judgment is the appropriate procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement." Pannagl v. Kelly , 2013-0823, p. 6 (La. App. 5 Cir. 5/14/14), 142 So.3d 70, 74 (citing American Bank v. Saxena , 553 So.2d 836 (La. 1989) ).
"In a suit on a promissory note, the payee who produces the note sued upon makes out a prima facie case and will be given the presumption that the instrument was given for value received unless the maker casts doubt upon the reality of the consideration." Lilly Lyd, L.L.C. v. Graham , 2014-0594, p. 5 (La. App. 5 Cir. 12/30/14), 167 So.3d 829, 831-32 (citing Graves v. Porterfield , 555 So.2d 595, 598 (La. App. 1 Cir.1989) ). "Once the maker casts doubt upon the consideration, the ultimate burden shifts to the payee to prove consideration by a preponderance of the evidence." Id. ; See also Sonnier v. Gordon , 50,513, pp. 11-12 (La. App. 2 Cir. 4/13/16), 194 So.3d 47, 54 ; Williamson v. Guice , 613 So.2d 797, 800 (La. App. 4 Cir. 1993). Such proof can be established *272 through parol evidence. Scafidi v. Johnson , 420 So.2d 1113, 1115 (La. 1982) ; Johnson v. Drury , 99-1071, p. 10 (La. App. 5 Cir. 6/2/00), 763 So.2d 103, 109, 110.
In the present case, Conerly presented his sworn affidavit in support of his defenses to the notes. In his affidavit, Conerly refers to the agreement set forth in the attached Letter of Intent. Additionally, he states:
• Conerly informed Jarrell that the mortgage on the Marion Property was in danger of default;
• Conerly previously spent significant sums to prevent foreclosure;
• Conerly and Jarrell verbally agreed that in order to secure the Marion Property, the venture would have to prevent a foreclosure;
• Jarrell would provide Conerly with funds to pay the mortgage until Jarrell fulfilled his obligation to obtain financing for the venture;
• Jarrell asked Conerly to sign promissory notes as a formal means of recording and accounting for each of the mortgage payments, and that such recording would reflect Jarrell's personal investment in the business;
• Jarrell stated that the money provided to Conerly was an advancement of funds made in anticipation of the venture, and that it was understood that the funds would be paid back to Jarrell through the financing or from the profits of the venture, but not from Conerly personally;
• Conerly accepted funds from Jarrell on behalf of K & M, LLC, and made payments on the Marion Property mortgage; and
• Jarrell was refused financing by at least one institution because he refused to provide a personal guaranty. Jarrell failed to secure any start-up capital after that point. As a result, the business venture failed.
Jarrell maintains that he is a holder in due course of the four promissory notes, having no knowledge of any defenses claimed by Conerly at the time the notes were prepared. In support of his motion for partial summary judgment, Jarrell presented the promissory notes and the affidavit of his daughter, Terri J. Hornsby. Aside from confirming the existence of the notes in question, Ms. Hornsby's affidavit states:
• She was granted a power of attorney for her father on June 26, 2013, which was prior to the Letter of Intent; and
• Her father has been diagnosed with cognitive impairment and memory loss, and has been prescribed medication utilized for the treatment of Alzheimer's disease.
Based on our review of the evidence presented, we find that Conerly's affidavit raises legitimate questions regarding the failure of consideration and whether the notes were simulations. On the other hand, Ms. Hornsby's affidavit does not indicate that she had any personal or first-hand knowledge of the agreement reached between Conerly and Jarrell. Moreover, it must be noted that the record does not contain the power of attorney referenced in her affidavit, nor does it include any evidence concerning Jarrell's medical diagnosis and treatment for a mental impairment. Thus, the judgment granting Jarrell's motion for partial summary judgment is reversed.
CONCLUSION
After our de novo review of the record, we conclude that the trial court erred in finding Jarrell to be a holder in due course on the four promissory notes. At the very *273 least, there are material questions of fact on that issue. Additionally, we find that the evidence presented by Conerly in opposition to the motion for partial summary judgment casts doubt on the consideration for the notes and/or whether the notes were simulations. Accordingly, we find that the trial court erred in granting the motion for partial summary judgment in favor of Jarrell. The judgment is reversed, and the matter is remanded for further proceedings.
REVERSED AND REMANDED

The Letter of Intent is dated June 27, 2013 at the top of the document, but is signed on June 30, 2014.

It is undisputed that Conerly made some interest payments.

Conerly's reconventional demand is pending in the trial court.