| | | |
|---|---|---|
| **VALERIE TITUS** | * | NO. 2023-CA-0349 |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **MARK TITUS** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-05588, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Chief Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)

Armand Samuels
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
Kristopher M. Redmann
601 Poydras Street
Suite 2775
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFF/APPELLEE


Mark Titus
208 Ranger Place
Slidell, LA 70458

     *PRO SE* COUNSEL FOR DEFENDANT/APPELLANT

                      **AFFIRMED**
                    **November 29, 2023**

*TFL*

*SCJ*

*KKH*
This matter derives from a suit to enforce payments on promissory notes. Appellant, Mark Titus, appeals the trial court's judgment which granted the motion for summary judgment of his former wife, Valerie Titus ("Ms. Titus"). Ms. Titus contended that Mr. Titus had defaulted on two (2) promissory notes in the amounts of $164,000.00 ("First Note") and $350,000.00 ("Second Note") (collectively, the "Notes"). The Notes were confected to settle Mr. Titus' child support arrearages and the parties' community property regime. On appeal, Mr. Titus asserts that the trial court erred because genuine issues of material fact remained as to whether he was in default based on the terms of the promissory notes and whether he had been afforded an adequate opportunity to complete discovery.

Upon review, the record supports that Ms. Titus produced the Notes and established a *prima facie* case that Mr. Titus was in default and that correspondingly, Mr. Titus failed to meet his burden of proof to show that he was not liable for the debt. The record also supports that Mr. Titus had an adequate opportunity to complete discovery. Accordingly, we affirm the judgment granting Ms. Titus' motion for summary judgment.

1

# FACTUAL AND PROCEDURAL HISTORY

Mr. Titus and Ms. Titus divorced after several years of marriage. To settle pending issues related to the dissolution of their marriage, the parties executed two promissory notes on December 19, 2020: the First Note in the principal amount of $164,000.00 represented the child support arrearages owed by Mr. Titus and the Second Note in the principal amount of $350,000.00 represented Ms. Titus' share of the community property. The parties' agreement was memorialized in a January 2021 Consent Judgment on Community Property Partition ("Consent Judgment"). Ms. Titus claimed that Mr. Titus made the agreed payments for a few months and then failed to pay. Consequently, Ms. Titus filed a Petition to Enforce Promissory Notes and for Damages (the "Petition").

In the Petition, Ms. Titus asserted that the First Note required that all principal and accrued interest be paid in monthly installments of $1,000.00 on the fifth of every month, beginning on January 5, 2021, until extinguished. Under the terms of the Second Note, payments were owed after the extinguishment of the First Note. The payments on the Second Note also required monthly installments of $1,000.00 on the fifth day of every month until extinguished. Ms. Titus alleged that Mr. Titus made payments totaling $3,500.00 on the First Note. Thereafter, he ceased making payments, effectively placing him in default on both Notes. Ms. Titus averred that Mr. Titus' liability for both Notes by virtue of his default amounted to $510,000.00. In his *pro se* Answer, Mr. Titus denied that he was in default.[1] After repeated demands for payment to no avail, Ms. Titus filed a motion for summary judgment in September 2022.

---

[1] Appellant appears *pro se* throughout all of these proceedings.

### *Ms. Titus' Supporting Documentation*

Ms. Titus' submitted an affidavit and attached several documents in support of the summary judgment motion. Ms. Titus reiterated in her affidavit that Mr. Titus had paid only $3,500.00 on the First Note and that the payments were late. Her attachments included the Consent Judgment; executed copies of the First Note and the Second Note; a spread sheet delineating payments made by Mr. Titus; a text message thread exchange (the "Text Chain") between Mr. Titus and Ms. Titus regarding her demand for payment; requests for production of documents issued to Mr. Titus; and an affidavit from Armand Samuels, Ms. Titus' counsel, regarding his search of Orleans Parish mortgage records.

Ms. Titus averred that the undisputed facts established that the Consent Judgment and the terms of the Notes showed that Mr. Titus had executed the Notes in her favor. In addition to Mr. Titus' failure to make payments as required, she asserted that Mr. Titus had failed to meet his obligation to secure the Notes for a multiple indebtedness mortgage as proscribed by the Consent Judgment[2] and the terms of the Notes. [3]

---

[2] The Consent Judgment provided, in part, the following:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, within five (5) days of the signing of this Order, Mark Titus shall execute a Promissory Note in favor of Valerie Stelzer Titus in the amount of $350,000.00 that will be secured by a UCC or multiple indebtedness mortgage.

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Mark Titus shall execute a Promissory Note in favor of Ms. Titus in the amount of $164,000,00 that will be secured by a UCC or multiple indebtedness mortgage (representing the full balance of the executory amounts due for child support arrears and any remaining balance an equalization payment). . . .

[3] The terms of the First Note included the following:

> 6. **DUE ON SALE:** This Note is secured by a security instrument described in Section 17 securing repayment of this Note[.] [T]he property described in such security instrument may not be sold or transferred without the Lender's consent.

3

Ms. Titus acknowledged that the terms of the Second Note established that Mr. Titus owed the principal amount of $350,000.00, with monthly payments of $1,000.00 per month to begin after the extinguishment of the First Note.[4]

Ms. Titus attested that her attached spreadsheet depicted that Mr. Titus' total payments amounted to only $3,500.00 in 2021 and 2022.

Ms. Titus stated that the Text Chain exchange attachment confirmed that she contacted Mr. Titus regarding the status of the delinquent installment payments between October 2021 and December 2021; however, Mr. Titus refused to make any further payments. Specifically, an October 2021 Text Chain showed that Mr. Titus responded "[a]s soon as I know" when Ms. Titus asked about an expected date of payment. A December 2021 inquiry from Ms. Titus as to when she could get a check, elicited the following response from Mr. Titus: "[C]heck? I'm getting sued by discover [sic] need my money."

The affidavit of Mr. Samuels—Ms. Titus' attorney—attested that his personal search of Orleans Parish mortgage records determined that the records did not contain a multiple indebtedness mortgage as required by the Notes. He stated that the only security instrument recorded by Mr. Titus was a Uniform Commercial Code Financing Statement ("UCC-1"), which was "secured" by the underlying

---

If borrower breaches this provision, Lender may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.

\* \* \*

15. **SECURITY: THIS NOTE IS SECURED BY THE FOLLOWING:**

multiple indebtedness mortgage, filed City of New Orleans

[4] Other than the amount of the notes and when payment began, the terms of the First and Second Notes were identical.

Notes. Mr. Samuels maintained that the effect of that security instrument meant that the Notes were unsecured. [5]

Mr. Samuels also asserted that Mr. Titus had failed to produce any documentation in response to requests for production sent to Mr. Titus on August 2, 2022. [6] Mr. Samuels stated that Mr. Titus "failed to produce a single document subject to the Requests for Production."

### Mr. Titus's Opposition to Summary Judgment

Mr. Titus' initial opposition averred that he had not been given an adequate opportunity to complete discovery. He argued that such discovery could be essential to rebut Ms. Titus' assertions of undisputed material facts. In particular, he cited a need to depose Ms. Titus, maintaining that Ms. Titus had not cooperated

---

[5] The UCC-1 Financing Statement attached as an exhibit to the summary judgment motion listed Appellant as the debtor and Ms. Titus as the secured party. It identified the Notes as the collateral.

[6] Ms. Titus' first set of requests for production of documents submitted to Mr. Titus included the following:

> **REQUEST FOR PRODUCTION NO. 7:**
>
> Produce any and all Documents and/or Communications that evidence, support, or tend to support Your contention in Your Answer that you did not make payments in the amount of $3,500.00 pursuant to the First Note and did not cease making payments on November 1, 2022.
>
> **REQUEST FOR PRODUCTION NO. 8:**
>
> Produce any and all Documents and/or Communications that evidence, support, or tend to support You have not defaulted on the First Note.
>
> **REQUEST NO. 9:**
>
> Produce any and all Documens abd/or /communications that evidence, support, or tend to support You have not defaulted on the First Note.
>
> **REQUEST NO. 10;**
>
> Produce any and all Documents and /or Communications that evidence, support, or tend to support your contention that you are not liable to Plaintiff for a total principal amount of $510,500.00 by virtue of Your default under the First Note and the Second Note.

with his efforts to schedule her deposition. In support of this allegation, he attached e-mails dated July 27, 2022, and September 13, 2022, to Mr. Samuels where he made inquiries to schedule a time to depose Ms. Titus.[7] Mr. Titus claimed he received no response.

Mr. Titus also claimed that Ms. Titus' affidavit falsely represented that he was to secure the Notes and that he had filed the UCC-1 Financing Statement referenced in Mr. Samuels' affidavit. Mr. Titus countered that Ms. Titus, in fact, filed the UCC-1 Financing Statement. He maintained that her filing raised a fact issue as to whether she was the party responsible for securing the Notes and that Ms. Titus had not offered any evidence that he was obligated to secure the promissory notes with a multiple indebtedness mortgage. Mr. Titus also represented that the Notes lacked any acceleration clause that gave Ms. Titus the authority to demand payment on the balance owed for failure to make the installment payments.

In his supplemental opposition, Mr. Titus re-urged that Ms. Titus' failure to cooperate with his efforts to fix her deposition underscored his need for adequate time to complete discovery.

### Ms. Titus' Supplemental Reply to Appellant's Opposition

_____

[7] The July 27, 2022 e-mail stated the following:

Mr. Samuels,

A short while ago I hand delivered a copy of Answers as filed in reply to your filing to the address listed on the citation. I also included a request for the taking of Ms. Titus' deposition.

The September 13, 2022 e-mail included the following:

Mr. Samuels,

In response to the complaint, and also included body of the email sent, I ask to coordinate a date for the taking of deposition of your client.

Ms. Titus argued that Mr. Titus was only entitled to an opportunity for adequate discovery. Ms. Titus acknowledged that while Mr. Titus made inquiries to notice her deposition, he did not take affirmative steps to schedule her deposition over a period of time that covered six months. Ms. Titus argued that the ultimate responsibility to schedule her deposition rested with Mr. Titus. Moreover, she emphasized that Mr. Titus had not responded to her discovery requests. She also pointed out that Mr. Titus failed to support his position that he was not in default with an affidavit or documentary evidence.

### *Summary Judgment Hearing*

At the hearing, Mr. Titus informed the trial court that he wanted to depose Ms. Titus to establish that the parties had entered an agreement whereby Ms. Titus would accept other funds, such as payment of secondary education tuition, in lieu of the installment payments on the First Note. He argued that he had made such payments. However, he admitted he did not have proof of any payments beyond the $3500.00 Ms. Titus alleged in her statement of uncontested facts. Mr. Titus indicated he "hoped" to ascertain that proof through Ms. Titus' deposition. Mr. Titus admitted that he signed the Notes to settle the partition and indicated that the child support arrearages had accrued during a time when he was incarcerated. In response to Mr. Titus' argument that there remained a fact issue as to which party was to secure the Notes, the trial court indicated that the question of security for the Notes was not relevant to whether or not the Notes had been paid or whether payment was owed.

Ms. Titus countered that she supported the motion for summary judgment with documentary evidence verifying all the allegations made in her affidavit. She

7

maintained that Mr. Titus relied only on conclusory allegations and had failed to submit any documentation that the parties had entered any separate agreement.

At the conclusion of argument, the trial court granted the summary judgment motion. The trial court found that the debt had not been paid and opined that "as a matter of law, the indebtedness is owed." The written judgment awarded the total principal sum of $510,500.00, the amount set forth by Ms. Titus.[8]

This appeal ensued.[9]

## SUMMARY JUDGMENT/STANDARD OF REVIEW

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." *See* La. C.C.P. art. 966(A)(2). The summary judgment procedure is properly invoked "[a]fter an opportunity for adequate discovery." La. C.C.P. art. 966(A)(3). At that time, "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there are no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." *Id.* A genuine issue of material fact is one as to which reasonable persons could disagree. *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639

---

[8] The judgment provided, in part, the following:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that there be Judgment herein in favor of plaintiff, Valerie Titus, and against, Mark Titus, on the First Note and the Second Note, in the total principal amount of $510,500.00, together with the agreed upon interest of 3% per annum from the date of default until paid in full, all costs of these proceedings, including court costs, reasonable attorneys' fees, and for any other legal and equitable relief as the Court deems necessary and proper. a

[9] Mr. Titus filed a motion for new trial and a supervisory writ application to review the trial court's judgment. This Court denied Mr. Titus' writ application the day before the scheduled hearing on the motion for new trial. *See Titus v. Titus*, 2023-C-0042 (La. App. 4 Cir. 2/23/2023). Upon receiving notice of the writ's denial, the trial court declined to consider the merits of Mr. Titus' motion for new trial and granted Mr. Titus' motion for appeal.

So.2d 730, 751. "If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for trial on that issue [,]" and summary judgment is appropriate. *Id.* "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chapital v. Harry Kelleher & Co., Inc.*, p. 5 (La. App. 4 Cir. 6/4/14, 144 So.3d 75, 81 (quotation omitted). The applicable substantive law determines whether a fact is material. *See SBN V FNBC LLC v. Vista Louisiana, LLC*, 2018-1026, p. 6 (La. App. 4 Cir. 3/27/19), 267 So.3d 655, 660.

The burden of proof on a motion for summary judgment generally rests with the mover. La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," the mover must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* If done, then, the burden then shifts to the opposing party to "produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.* "Proof which consists of mere speculation and conclusory and unsubstantiated allegations is not sufficient to overcome summary judgment." *Puderer v. Hilcorp Energy Co.*, 2020-0383, pp. 12-13, (La. App 4 Cir. 3/24/21), 315 So.3d 348, 355.

The appellate court reviews summary judgment under the *de novo* standard of review, using the same standards employed by the trial court in determining whether summary judgment is appropriate. *See Roberston v. Kearney Companies,* 2020-0605, p. 3 (La. App. 4 Cir. 3/25/21), 315 So.3d 931, 935.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Titus raises the following assignments of error:

1. Whether the trial court committed legal error by looking beyond and disregarding the clear and unambiguous contract language and the true intent of the parties.

2. Whether the trial court erred in denying Defendant's ability to attack the allegations in the affidavits authenticating material facts and the veracity of the affiants.

3. Whether the trial court denied Defendant a fair opportunity to present his case by granting summary judgment when discovery that may change the result was incomplete.

4. Whether the trial court erred in considering the second note due.

5. Whether the trial court erred in determining Plaintiff was entitled to summary judgment when factual support established the existence of genuine triable issues of material fact and Plaintiff was not entitled to summary judgment as a matter of law.

## DISCUSSION

As referenced herein, the burden of proof rests with Ms. Titus as the mover for summary judgment. However, in a suit to enforce a promissory note, the plaintiff need only produce the note in question to establish a *prima facie* case. *Colonial Mort. & Loan Corp. v. James*, 2001-0526, p. 4 (La. App. 4 Cir. 3/6/02), 812 So.2d 817, 820. The plaintiff makes a *prima facie* case once she proves the defendant's signature or the defendant admits his signature. *See SBN*, 2018-1026, pp. 6-7, 267 So.3d at 66. "The burden of proof then shifts to the defendant to prove any affirmative defenses." *Colonial Mort.*, 2001-0526, p. 4, 812 So.2d at 820. The defendant must assert a valid defense to liability on the promissory note in order to defeat the summary judgment motion. *SBN*, 2018-1026, p. 7, 267 So.3d at 661. Separate and distinct claims unrelated to the question of liability will not be sufficient to defeat plaintiff's summary judgment motion. *Am. Bank v. Saxena*,

553 So.2d 836, 846 (La.1989). Accordingly, "summary judgment is the appropriate procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement." *Jarrell v. Conerly*, 2017-0713, p. 7 (La. App. 4 Cir. 3/17/18), 240 So. 3d 266, 271 (quoting *Pannagl v. Kelly*, 2013-0823, p. 6 (La. App. 5 Cir. 5/14/14), 142 So.3d 70, 74)).

In applying the above precepts to determine if the trial court properly granted summary judgment relief in the present matter, we must determine whether Ms. Titus established a *prima facie* case to enforce the Notes. Upon review, we find that she did. Ms. Titus offered into evidence her Affidavit supported by the signed, executed Notes and the Consent Judgment. Mr. Titus did not contest the existence of the Notes, his signature on the Notes, and the debt represented by the Notes. Accordingly, we frame our review of the merits of Mr. Titus' assignments of error on whether he met his burden of proof to offer valid defenses to his liability on the Notes.

Mr. Titus offers defenses to the liability of the debt in assigned errors Numbers 1, 2, 4, and 5. In these errors, he argues that the Notes' terms did not allow payment on demand; he was denied the ability to attack the allegations contained in the affidavits; the Second Note was not due; and genuine issues of material facts remained that precluded summary judgment. In his third assignment of error, Mr. Titus challenges whether he had adequate time to complete discovery. We shall first examine whether assignments of error Nos. 1, 2, 4, and 5 provide valid defenses to defeat the summary judgment motion. Thereafter, we shall consider whether the trial court afforded Mr. Titus an adequate opportunity to complete discovery.

*Mr. Titus' Defenses*

Assignment of Error No.1

In assigned error No. 1, Mr. Titus claims the Notes lacked any specific clause that permitted Ms. Titus to accelerate payment on demand based on his failure to make the monthly installment payments. He alleges that Ms. Titus' only remedy for failure to make the installment payments was that the unpaid principal would accrue interest at the rate of three percent (3%) per annum.[10] Mr. Titus admits that Ms. Titus could invoke payment on demand if he, as the "borrower," breached the provision to provide security.[11] As discussed further herein, Mr. Titus contends that he did not. Consequently, Mr. Titus submits that the trial court erred by looking beyond the clear and unambiguous language of the contract and granting summary judgment based on a remedy not contained in the Notes.

We find that Mr. Titus' argument is non-persuasive. Mr. Titus cites no law that specifically mandates that the inclusion of an acceleration clause is a mandatory requirement for the collection of a promissory note. Rather, our jurisprudence is well-established that the plaintiff's burden of proof to collect on a promissory note is straightforward—"the [plaintiff's] production of the note sued upon makes his case." *Merchants Trust & Sav. Bank v. Don's Int'l*, 538 So.2d 1060, 1061 (La. App. 4th Cir. 1989). Here, Mr. Titus does not contest the validity of the Notes or that he failed to make the installment payments as delineated in the Notes. Moreover, Mr. Titus points to no clause within the Notes that affirmatively

---

[10] Subsection 2 of the First Note states the following:

> 2. **INTEREST DUE IN THE EVENT OF DEFAULT:** In the event that the Borrower fails to pay the note in full on the due date, or has failed to make an installment payment due within 15 days of the due date, unpaid principal shall accrue at the rate of three percent (3%) per annum OR the maximum rate allowed by law, whichever is less, until the Borrower is no longer in default.

[11] *See* fn.3.

prohibits Ms. Titus from making demand on the Notes based on a failure to pay. Thus, the existence or non-existence of an acceleration clause is not a genuine issue of material fact that is germane to the enforcement of the Notes, and thereby, the status of any acceleration clause is insufficient to defeat summary judgment. [12] Accordingly, this assigned error is not meritorious.

Assignment of Error No. 2

Mr. Titus' second defense alleges the trial court erred because he was denied the opportunity to attack the validity of statements made by Ms. Titus and Mr. Samuels in their respective affidavits. The contested statements center on Mr. Samuels' and Ms. Titus' claims that Mr. Titus breached his obligation to provide security for the Notes. Mr. Titus maintains that the claims were blatantly false and suggests the trial court denied him the opportunity to cross-examine Ms. Titus and Mr. Samuels. The record reveals this defense is meritless.

---

[12] The trial court also relayed that the breach of any obligation to provide security for the Notes was not issue an issue in determining summary judgment. The following exchange took place:

MR. TITUS:

We, Your Honor, there's also the matter of that who was obligated to secure the notes

JUDGE REESE:

Well, again, you are talking about secure [sic]. Security for the notes is not in addition [to] whether or not it was paid and whether or not it's owed. As a matter of law, I think it's owed.

MR. TITUS:

The plaintiff seemed to make great headway of faulting for failure to secure the notes, and there would be evidence to put forth that - -

JUDGE REESE:

That may be important to him. That's not important to me.

First, we note that Mr. Titus had the opportunity to challenge the veracity of the affidavits. He did so in his opposition memoranda to summary judgment and at the summary judgment hearing. Next, regardless of the affidavits' veracity regarding the obligation to provide security, this defense—which relates back to Ms. Titus' right to accelerate payments on the Notes—is not relevant or material to dispute Ms. Titus' *prima facie* case that Mr. Titus executed the Notes and that he owed the payments. This error is without merit.

Assignment of Error No. 4

Mr. Titus' defense that the trial court erred in granting summary judgment because the Second Note was not due also lacks merit. This defense rests on Mr. Titus' representation that it was premature to demand payment on the Second Note because that Note did not become due and payable until the extinguishment of the First Note.

It is uncontested that payment on the Second Note was not required until the extinguishment of the First Note. However, Mr. Titus presents no valid defense to contest that Ms. Titus established a *prima facie case* to collect on the First Note. Therefore, in reviewing the Notes' terms *in para materia*, the Second Note became due when Mr. Titus defaulted on the terms to pay the First Note.

Assignment of Error No. 5

In this defense, Mr. Titus generally alleges that genuine issues of material fact remained that precluded summary judgment. Again, the disputed fact issue specifically cited by Mr. Titus is his claim that a factual dispute remains as to whether he breached an obligation to provide security, the only express provision in the Notes whereby a breach allowed for acceleration of payment based on the failure to make the monthly installments. However, this Court has already

determined that the existence of an acceleration clause is not a material fact for purposes of determining Ms. Titus' right to enforce payment of the Notes through the summary judgment process. Mr. Titus does not support this error with any other documentation to show that genuine issues of material fact remain. Thus, we find no merit to this assigned error.

### Assignment of Error No. 2/Adequate Discovery

Mr. Titus maintains that the trial court prematurely granted summary judgment because discovery was not complete. He alleges discovery was "ongoing" because he had attempted to depose Ms. Titus on four occasions without response.

La. C.C.P. art. 966(A)(3) states that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." In construing the article, "[a]lthough the language of article 966 does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete, the law does require that the parties be given a fair opportunity to present their case." *Varnado v. 201 St. Charles Place, LLC*, 2022-0038, p. 6 (La. App. 4 Cir. 6/29/22), 344 So.3d 241, 247 (citation omitted).

The trial court has the discretion to hear a motion for summary judgment or grant a continuance when addressing an adequate discovery claim. *Roadrunner Transportation Sys. v. Brown*, 2017-0040, p. 11 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1272. The standard of review to evaluate the trial court's decision is the abuse of discretion standard. *Id.* The four-factor test that appellate courts

15

utilize in reviewing whether adequate time was allotted for discovery prior to a grant of summary judgment encompasses the following:

(1) whether the party was ready to go to trial;

(2) whether the party indicated what additional discovery was needed;

(3) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it; and

(4) whether the discovery issue was raised in the trial court before the entry of the summary judgment.

*See Varnado*, 2022-0048, pp. 6-7, 344 So.3d at 248. Notwithstanding these factors, in further construing the intent of art. 966, our jurisprudence provides that "[u]nless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact." *Id.*, 2022-0038, p. 6, 344 So.3d at 248 (citation omitted). Consistent with that precept, summary judgment is not premature when the issue presented is a purely legal one, there are no genuine issues of material fact, and additional discovery will not change the result and would be fruitless. *See SBN*, 2018-1026, pp. 8-9, 267 So.3d at 662.

On appeal, Mr. Titus contends that Ms. Titus' deposition would enable him to make a showing that the original template to make the Notes deleted the due on date payment provision, inferring again that Ms. Titus did not have the right to accelerate payments on the Notes. However, as discussed herein, as a matter of law, Ms. Titus needed to only produce the Note(s) to make her *prima facie* case for the Notes' enforcement. *See Merchants Trust, supra*. Accordingly, Mr. Titus desire to depose Ms. Titus on the question of her right to accelerate payment is a separate and distinct matter that is unrelated to the question of his liability on the

16

Note. Additional discovery would not have changed the result and would have been fruitless. Accordingly, the trial court did not abuse its discretion in denying Mr. Titus' request to continue the summary judgment hearing.

We also find no abuse of the trial court's discretion in rejecting Mr. Titus' request for a continuance upon application of the multi-factor test.

In terms of trial readiness, Ms. Titus filed her Petition in June 2022 and attached the Notes as supporting documentation. The summary judgment hearing took place nearly six months later. As discussed herein, our jurisprudence establishes that the summary judgment process is the proper procedural mechanism to enforce a promissory note. *See Jarrell*, 2017-0713, p.7, 240 So.3d at 271. Accordingly, in consideration of the nature of the litigation, the matter was ready for trial.

In the second factor, Mr. Titus identified that he needed Ms. Titus' deposition to obtain confirmation that the Notes lacked an acceleration clause for late payments. However, that information has already been deemed immaterial as a defense to enforcement of the notes. To the extent that Mr. Titus alleges, as he did at trial, that Ms. Titus' deposition could reveal an agreement that allowed him to offset the payments required from the First Note with payment of other child care expenses, Mr. Titus offered no proof as to how Ms. Titus' deposition would establish such an agreement. Ms. Titus denied the claim. Regardless, Mr. Titus had sufficient time to fix Ms. Titus' deposition, as well as to conduct other discovery. He not only failed to notice Ms. Titus' deposition, he also failed to submit written discovery demands to Ms. Titus to elicit any documentation to support his defenses to the Notes' enforcement. Notably, Mr. Titus also failed to

respond to Ms. Titus' request for production of documents to submit any evidence that he did not owe the Notes.

As to the third factor, the record shows that Mr. Titus did not conduct any discovery between the date the motion for summary judgment was filed and the date of the hearing.

The fourth factor analyzes whether the discovery issue was raised before the entry of judgment on the summary judgment motion. The record substantiates that Mr. Titus raised the issue of additional discovery prior to the entry of the judgment. However, we find that the information sought from the additional discovery requested would not have established valid defenses to the enforcement of the Notes. Accordingly, the trial court was well within its discretion to deny Mr. Titus' request for a continuance and rule on the merits of the summary judgment motion. Therefore, Mr. Titus' argument that the trial court prematurely granted summary judgment is without merit.

## DECREE

Mr. Titus failed to meet his burden of proof to establish affirmative defenses to the Notes' enforcement. Based on the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**